638 So.2d 502 (1994)
W.R. GRACE & CO.  CONN., etc., Petitioner,
v.
Thomas WATERS, et ux., Respondents.
No. 81004.
Supreme Court of Florida.
June 2, 1994.
*503 Betsy E. Gallagher and Angela C. Flowers of Kubicki, Draper, Gallagher & McGrane, P.A., Miami, for petitioner.
Colson, Hicks, Eidson, Colson & Matthews, Miami, and Marc Cooper and David H. Pollack of Cooper & Wolfe, P.A., for respondent.
Edward T. O'Donnell of Herzfeld & Rubin, Miami, and Malcolm E. Wheeler of Parcel, Mauro, Hultin & Spaanstra, P.C., Denver, CO, amicus curiae for Product Liability Advisory Council, Inc.
Ervin A. Gonzalez and O. Oliver Wragg of Robles & Gonzalez, P.A., Miami, amicus curiae for Academy of Florida Trial Lawyers.
GRIMES, Chief Justice.
We review United States Mineral Products Co. v. Waters, 610 So.2d 20 (Fla. 3d DCA 1992), in which the court certified a question as one of great public importance. We have jurisdiction under article V, section 3(b)(4), of the Florida Constitution.
Thomas Waters and his wife filed this action seeking compensatory and punitive damages against several manufacturers of asbestos-containing products, including W.R. Grace & Company (Grace). From the late 1950s until 1988, Waters worked as a tile setter. The complaint alleged that Waters had developed asbestosis as a result of exposure to Grace's products at various job sites.
Prior to trial, Grace filed a motion for summary judgment on the issue of punitive damages asserting that (1) Grace's conduct, as a matter of law, did not rise to the level required for the imposition of punitive damages in Florida; (2) since punitive damage judgments had been entered against it in other jurisdictions, a partial summary judgment should be entered in accordance with a prior "standard ruling" by the trial court;[1] and (3) the punitive damages claim violated Grace's due process rights. The trial court granted Grace's motion and entered a partial summary judgment on the punitive damages issue based on the "standard ruling."
The jury returned a verdict finding Grace 50% liable, the codefendant 40% liable, and Waters 10% comparatively negligent. After set-offs and reductions for comparative negligence, final judgment for compensatory damages was entered against the defendants. Subsequently, Grace appealed, and Waters cross-appealed the summary judgment in favor of Grace on the punitive damages claim.
In a split decision, the district court of appeal affirmed the judgment for compensatory damages but held that the trial court erred in striking Waters' punitive damages claim. Waters, 610 So.2d at 22. The court ruled that the fact that a defendant has already had punitive damages assessed against it does not preclude punitive damages in future litigation. The court reinstated Waters' punitive damages claim against Grace and remanded the case. Id. However, the district court of appeal also certified to this Court the question concerning the propriety of imposing successive punitive damage awards against a single defendant for the same course of conduct. Id. at 23.
Punitive damages are appropriate when a defendant engages in conduct which is fraudulent, malicious, deliberately violent or oppressive, or committed with such gross negligence as to indicate a wanton disregard for the rights of others. White Constr. Co. v. Dupont, 455 So.2d 1026, 1028-29 (Fla. 1984); Winn & Lovett Grocery Co. v. Archer, 126 *504 Fla. 308, 327, 171 So. 214, 221 (1936). Punishment and deterrence are the policies underlying punitive damages. St. Regis Paper Co. v. Watson, 428 So.2d 243 (Fla. 1983).
Grace asks this Court to limit the imposition of punitive damage awards in mass tort litigation, or at least with respect to asbestos cases. The company warns of the likelihood of "overkill" brought about by multiple punitive damage awards against a single defendant for the same course of conduct. Grace argues that, in the context of asbestos litigation, the interests of punishment and deterrence are not advanced by the continued imposition of punitive damages. It contends that multiple awards of exemplary damages will lead to asset depletion threatening the solvency of corporations, and, ultimately, will result in the unavailability of even compensatory damages for future claimants. Grace further points out that it discontinued marketing asbestos-containing products over twenty years ago. Because the company has been assessed punitive damages in previous asbestos cases, Grace asserts that it "has been punished enough."
Roginsky v. Richardson-Merrell, Inc., 378 F.2d 832 (2d Cir.1967), was one of the earliest cases to express concern over multiple punitive damage awards in mass tort litigation. In that case, the manufacturer of MER/29, a drug used to lower cholesterol levels, contested an award of punitive damages for personal injuries allegedly caused by MER/29. Id. at 832. This was the first of seventy-five similar cases to be tried in the Southern District of New York. Id. at 834. Several hundred other actions had been filed elsewhere, and the company had already sustained several large punitive damage awards in cases involving MER/29. Id.
The court recognized the potentially devastating impact on the company if all plaintiffs in MER/29 cases were awarded punitive damages. Id. at 839. However, the court stated:
We know of no principle whereby the first punitive award exhausts all claims for punitive damages and would thus preclude future judgments... . Neither does it seem either fair or practicable to limit punitive recoveries to an indeterminate number of first-comers, leaving it to some unascertained court to cry, "Hold, enough," in the hope that others would follow.
Id. at 839-40 (footnotes omitted). Ultimately, the court declined to judicially limit successive punitive damage awards in products liability cases.
In the twenty-seven years following the Roginsky opinion, many courts have addressed the issue of multiple punitive damage awards against a single defendant for the same course of conduct. The courts of other jurisdictions have unanimously refused to limit the imposition of successive punitive damage awards in mass tort or products liability litigation. E.g., Dunn v. Hovic, 1 F.3d 1371 (3d Cir.), modified in part on other grounds, 13 F.3d 58 (3d Cir.), cert. denied, ___ U.S. ___, 114 S.Ct. 650, 126 L.Ed.2d 608 (1993); Glasscock v. Armstrong Cork Co., 946 F.2d 1085 (5th Cir.1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1778, 118 L.Ed.2d 435 (1992); Jackson v. Johns-Manville Sales Corp., 781 F.2d 394 (5th Cir.), cert. denied, 478 U.S. 1022, 106 S.Ct. 3339, 92 L.Ed.2d 743 (1986); Moran v. Johns-Manville Sales Corp., 691 F.2d 811 (6th Cir.1982). Three of Florida's district courts of appeal have reached the same conclusion. Waters, 610 So.2d at 20; Baione v. Owens-Illinois, Inc., 599 So.2d 1377 (Fla. 2d DCA 1992); Johns-Manville Sales Corp. v. Janssens, 463 So.2d 242 (Fla. 1st DCA 1984), review denied, 467 So.2d 999 (Fla. 1985); Celotex Corp. v. Pickett, 459 So.2d 375 (Fla. 1st DCA 1984), approved, 490 So.2d 35 (Fla. 1986).
The solution to the problem which is most often suggested is the so-called "one bite" or "first comer" theory of punitive damages whereby, in successive litigation arising from a continuing episode, the award of exemplary damages to one plaintiff would preclude the recovery of punitive damages for all subsequent plaintiffs. This approach has been uniformly rejected. See State ex rel. Young v. Crookham, 290 Or. 61, 618 P.2d 1268, 1272 (1980) (This court cannot "endorse a system of awarding punitive damages which threatens to reduce civil justice to a race to the courthouse steps."); Davis v. Celotex Corp., 187 W. Va. 566, 420 S.E.2d 557, 565 (1992) *505 ("[I]t seems highly illogical and unfair for courts to determine at what point punitive damage awards should cease."); Andrea G. Nadel, Annotation, Propriety of Awarding Punitive Damages to Separate Plaintiffs Bringing Successive Actions Arising Out of Common Incident or Circumstances Against Common Defendant or Defendants ("One Bite" or "First Comer" Doctrine), 11 A.L.R. 4th 1261 (1982).[2]
We acknowledge the potential for abuse when a defendant may be subjected to repeated punitive damage awards arising out of the same conduct. Yet, like the many other courts which have addressed the problem, we are unable to devise a fair and effective solution. Were we to adopt the position advocated by Grace, our holding would not be binding on other state courts or federal courts. This would place Floridians injured by asbestos on an unequal footing with the citizens of other states with regard to the right to recover damages from companies who engage in extreme misconduct. Any realistic solution to the problems caused by the asbestos litigation in the United States must be applicable to all fifty states. It is our belief that such a uniform solution can only be effected by federal legislation. See Glasscock, 946 F.2d at 1085; Racich v. Celotex Corp., 887 F.2d 393, 399 (2d Cir.1989); Moran, 691 F.2d at 817; Juzwin v. Amtorg Trading Corp., 718 F. Supp. 1233, 1236 (D.N.J. 1989).
Grace also attacks the imposition of punitive damages in this case on constitutional grounds. Grace argues that punitive damage awards, which exceed an amount which is reasonably necessary to punish and deter, violate the concept of "fundamental fairness" inherent in due process.
In Pacific Mutual Life Insurance Co. v. Haslip, 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991), the United States Supreme Court reviewed a punitive damage award in an Alabama insurance fraud case. The award was more than four times the amount of compensatory damages and over two hundred times the plaintiff's out-of-pocket expenses. Id. at 23, 111 S.Ct. at 1046. The Court recognized that punitive damages are subject to some degree of due process analysis. "[U]nlimited jury discretion  or unlimited judicial discretion for that matter  in the fixing of punitive damages may invite extreme results that jar one's constitutional sensibilities." Id. at 18, 111 S.Ct. at 1043. However, the Court refused to "draw a mathematical bright line between the constitutionally acceptable and the constitutionally unacceptable that would fit every case." Id. Instead, the Court reviewed the procedures employed in Alabama to determine whether they satisfied due process.
In Haslip, the Court focused on the punitive damage jury instructions and the post-trial procedures for reviewing punitive damage awards. Id. at 20-21, 111 S.Ct. at 1044-45. The Court found that the jury instructions imposed "a sufficiently definite and meaningful constraint on the discretion of Alabama fact finders in awarding punitive damages," and that the post-verdict review ensured "that punitive damages awards are not grossly out of proportion to the severity of the offense and have some understandable relationship to compensatory damages." Id. at 22, 111 S.Ct. at 1045. As the award in Haslip "did not lack objective criteria," the Court rejected the due process challenge. Id. at 23, 111 S.Ct. at 1046.
To the extent that Grace relies on Haslip to challenge Florida's procedures for assessing punitive damages, its argument is premature. In the instant case, Waters' punitive damages claim was struck before trial. The issue was never before the jury. There is no *506 way to predict whether a jury would award punitive damages in this case, nor is it possible to determine whether the award would be "grossly out of proportion to the severity of the offense" without actually seeing the size of the award. Haslip, 499 U.S. at 22, 111 S.Ct. at 1045.
Further, Haslip did not involve a challenge to a punitive damage award based on the fact that the defendant had been assessed punitive damages in previous cases. Those courts which have addressed constitutional challenges to successive punitive damage awards in asbestos cases have rejected them. E.g., Hovic, 1 F.3d at 1385-91; Simpson v. Pittsburgh Corning Corp., 901 F.2d 277 (2d Cir.), cert. dismissed, 497 U.S. 1057, 111 S.Ct. 27, 111 L.Ed.2d 840 (1990); Puppe v. A.C. & S., Inc., 733 F. Supp. 1355 (D.N.D. 1990).
In reaching its conclusion in this case, the district court of appeal suggested that Grace could use the fact that it had previously been assessed punitive damages as mitigation before the jury. Waters, 610 So.2d at 22. However, Grace points out that advising the jury of previous punitive damage awards would actually hurt its cause. The introduction of such evidence would be extremely prejudicial to a defendant trying to convince a jury that its conduct is worthy of no punishment at all.
We agree with Grace's position on this point. We recognize that defendants in mass tort litigation who are forced to litigate the issue of liability and punitive damages in the same proceeding are at a severe disadvantage. We also recognize that even those defendants against whom no prior punitive damage awards have been assessed are prejudiced by the current procedure which permits evidence of a defendant's net worth to be introduced when liability for punitive damages has not yet been determined. Finally, we are mindful of the concerns of the Supreme Court in Haslip that the procedures followed in punitive damage cases must accord with due process. Accordingly, we announce a change in the procedure by which punitive damages in Florida may be sought.
We hold that henceforth trial courts, when presented with a timely motion, should bifurcate the determination of the amount of punitive damages from the remaining issues at trial. At the first stage of a trial in which punitive damages are an issue, the jury should hear evidence regarding liability for actual damages, the amount of actual damages, and liability for punitive damages, and should make determinations on those issues. If, at the first stage, the jury determines that punitive damages are warranted, the same jury should then hear evidence relevant to the amount of punitive damages and should determine the amount for which the defendant is liable. At this second stage, evidence of previous punitive awards may be introduced by the defendant in mitigation.[3] In this manner, the defendant would also be able to build a record for a due process argument based on the cumulative effect of prior awards. See Hovic. This new procedure, of course, is meant only to supplement, not replace, the limitations on punitive damages set forth by the legislature in sections 768.71-768.74, Florida Statutes (1993).
In conclusion, we hold that prior punitive damages assessed against a defendant do not preclude subsequent awards against the same defendant for injuries arising from the same conduct. We approve the decision below and remand for further proceedings consistent with this opinion.[4]
It is so ordered.
OVERTON, SHAW, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] The "standard ruling" was issued by Judge Harold Vann who administered the asbestos litigation docket in Dade County and elsewhere in Florida pursuant to administrative orders from this Court beginning in 1980. The ruling eliminated claims for punitive damages upon a showing that the defendant had already been subjected to a prior punitive damage award for the same conduct.
[2] To limit recovery to the first punitive damage award would be particularly unfair in Florida which limits the amount of punitive damages to three times the award of compensatory damages. § 768.73, Fla. Stat. (1993). If a slightly injured plaintiff were the first to recover punitive damages, the small award of compensatory damages would limit the amount of punitive damages. Under those circumstances, this amount would not be nearly enough to punish a defendant whose egregious conduct had caused injury to many persons. See Froud v. Celotex Corp., 107 Ill. App.3d 654, 63 Ill.Dec. 261, 263, 437 N.E.2d 910, 913 (1982) (Public policy does not dictate that "defendants should be relieved of liability for punitive damages merely because, through outrageous misconduct, they may have managed to seriously injure a large number of persons."), reversed on other grounds, 98 Ill.2d 324, 74 Ill. Dec. 629, 456 N.E.2d 131 (1983).
[3] Recently, the Supreme Court of Texas adopted bifurcated proceedings in cases involving claims for punitive damages. Transportation Ins. Co. v. Moriel, No. D-1507, ___ S.W.2d ___ (Tex. June 8, 1994). In Moriel, the court noted that at least thirteen other states now require bifurcated trials when punitive damages are sought. Id.
[4] We decline to address the other issue raised by Grace because it is not within the scope of the certified question.