695 So.2d 845 (1997)
Deana A. DESSANTI and Arnold Blair Dale, Appellants/Cross-Appellees,
v.
Carmen Maria CONTRERAS, as Administrator and Personal Representative of the Estate of Flor Torres Osterman and as Guardian for and on behalf of Carmen Lorena Duarte, Minor Child, Appellee/Cross-Appellant.
Nos. 95-1938, 95-1939.
District Court of Appeal of Florida, Fourth District.
June 18, 1997.
Rehearing Denied July 29, 1997.
David B. Pakula of Kubicki Draper, Miami, for appellants/cross-appellees.
Nancy Little Hoffman of Nancy Little Hoffman, P.A., and Hiram M. Montero of Montero, Finizio, Velasquez & Weissing, P.A., Fort Lauderdale, for appellee/cross-appellant.
WARNER, Judge.
In this appeal, the appellants contend that the trial court committed reversible error by failing to bifurcate the issue of punitive damages from the issues of negligence and compensatory damages in violation of the dictates of W.R. Grace & Co. v. Waters, 638 So.2d 502 (Fla.1994). We hold that while Grace requires bifurcation of the determination *846 of the amount of punitive damages from the issues of negligence, compensatory damages, and liability for punitive damages, the error in failing to bifurcate under the facts of this case was harmless. We therefore affirm.
Appellant Dale struck and killed a pedestrian, Florence Osterman, whose estate is the appellee in this case. Dale left the scene of the accident but later called 911 to report that he thought he might have hit something. When the police finally took Dale into custody and performed a blood alcohol test four hours after the accident, it revealed that he had a blood alcohol level of .10%. Osterman was survived by an eighteen month old child.
The estate filed suit against Dale and Dessanti, the owner of the vehicle. Prior to trial, the defendants filed a motion to bifurcate the plaintiff's claim for the amount of punitive damages from the remainder of the issues at trial. For the purposes of the motion, Dale was willing to admit his liability for punitive damages, although he was not prepared to admit the underlying facts that would permit the award of punitive damages, including the fact that he was intoxicated. The motion recited that because of the concession "all of the factual evidence regarding the happening of this accident would go merely to the jury's determination of the amount of punitive damages; and thus would only be admissible in the second stage of the trial." The trial court denied the motion.
At trial in opening statement, Dale's attorney questioned whether Dale was speeding and questioned whether or not the decedent was walking in the roadway with her back to the traffic, a violation of a traffic statute. As the trial court noted, the attorney opened the door for the evidence concerning liability for punitive damages to come in. About half of the witnesses who testified were offered on the issues of Dale's negligence and for punitive damages. The remaining witnesses testified to compensatory damage issues.
While the appellee asked the jury for a verdict for ten million in compensatory damages, the jury awarded the estate $1 million against both Dessanti and Dale. The jury also awarded $110,000 in punitive damages against Dale, which the court later reduced to $5,000 on a motion for remittitur. Dale and Dessanti both appeal the trial court's failure to bifurcate the trial, and the estate appeals the remittitur of the punitive damage award.
The estate argues that Dessanti does not have standing to file this appeal, because after suit was filed, but prior to trial, Dessanti filed for and was discharged from bankruptcy. As a result, there is no possibility that Dessanti will have to personally pay the judgment. However, even though the debt owed by Dessanti may have been discharged in bankruptcy, the debt itself is not discharged. Matter of Edgeworth, 993 F.2d 51 (5th Cir.1993). After the adverse jury verdict, Dessanti filed suit against U.S. Security, for acting in bad faith.[1] Under section 627.7262, Florida Statutes (1991), any judgment against Dessanti could be enforceable against U.S. Security. If a jury were to find that U.S. Security acted in bad faith, it could be held liable for the entire amount of the compensatory damages in excess of its policy limits, or $990,000. Thus, we hold that U.S. Security is the real party in interest for this appeal and therefore the issue of bifurcation of the amount of punitive damages from the remainder of the case is not moot.
W.R. Grace came to the supreme court on a certified question concerning the propriety of imposing successive punitive damage awards against a single defendant for the same course of conduct. United States Mineral Prods. Co. v. Waters, 610 So.2d 20, 23 (Fla. 3d DCA 1992). The bifurcation requirement it adopted was in response to the prejudicial effect of introducing evidence of other punitive damage awards when the defense is "trying to convince a jury that its conduct is worthy of no punishment at all." Grace, 638 So.2d at 506. The supreme court required bifurcation of only the calculation of the amount of punitive damages from the *847 remaining issues at trial. This is explicit in the opinion:
We hold that henceforth trial courts, when presented with a timely motion, should bifurcate the determination of the amount of punitive damages from the remaining issues at trial. At the first stage of a trial in which punitive damages are an issue, the jury should hear evidence regarding liability for actual damages, the amount of actual damages, and liability for punitive damages, and should make determinations on those issues.
Id. (emphasis supplied).
Here, the appellants requested bifurcation of the amount of punitive damages from the remaining issues on the premise that he would admit liability for punitive damages. Yet he was unwilling to concede the underlying facts. Part and parcel of a jury's decision as to liability for punitive damages is a determination of the egregiousness of a defendant's conductthe determination of liability requires a decision as to the extent of the defendant's "bad conduct."
Bifurcation to avoid presentation of evidence of liability for punitive damages in the first stage of the trial was never addressed in W.R. Grace, and the court was concerned about only the effect that evidence of financial considerations relevant to the amount of punitive damages may have in coloring a jury's determination of the issue of liability for punitive damages. Thus, W.R. Grace does not compel bifurcation of issues so that the defendant can prevent prejudicial information regarding his liability for punitive damages from reaching the jury. In fact, since appellants admitted entitlement for punitive damages, no financial information could poison the finding of liability for punitive damages. The purpose to be accomplished by a W.R. Grace bifurcation was to segregate financial issues from liability issues. This was not a concern in this case. The defendants' net worth here was a pittance, and the court entered a remittitur of the larger award given by the jury. Failing to bifurcate the determination of the amount of punitive damages created no harm in this case which the application of a W.R. Grace bifurcation was intended to prevent. We do not accept the harmless error analysis of the dissent because the dissent readily admits that the bifurcation sought in this case was not for the purposes for which the supreme court established the procedure. Moreover, Dale did not object at trial to the introduction of the challenged testimony, nor did he accept the trial court's offer to use instructions to limit the jury's consideration of the allegedly prejudicial testimony.
What the appellants really request us to decide is that the evidence on liability for punitive damages was so prejudicial that it should not have been presented in the same proceeding in which compensatory damages were determined. Severance of claims is permitted under Florida Rule of Civil Procedure 1.270. However, it is a discretionary ruling. Moreover, this case is no different than many other cases where evidence on the liability for punitive damages is presented in the first stage of the proceedings. We have never held that severance in such cases is mandated.
Finding that the error in the failure to bifurcate the determination of the amount of punitive damages from the issues of liability and compensatory damages was harmless, we affirm. We find no error in the trial court's order on remittitur and affirm on the cross-appeal.
GROSS, J., concurs.
HAUSER, JAMES C., Associate Judge, concurs in part and dissents in part with opinion.
HAUSER, JAMES C., Associate Judge, concurring in part and dissenting in part.
I agree with the majority that Ms. Dessanti had standing to file this appeal and that U.S. Security, the insurer of Ms. Dessanti, is the real party in interest. I also agree that the trial court erred, based on W.R. Grace & Co. v. Waters, 638 So.2d 502 (Fla.1994), to bifurcate the amount of punitive damages from the remainder of the case. I am even willing to agree that, based on the facts of this litigation, the failure to bifurcate in Mr. Dale's case was probably harmless error. However, I cannot agree that the failure to *848 bifurcate was harmless error as to Ms. Dessanti and the real party in interest, U.S. Security.
The Florida Supreme Court has made it clear that trial courts must bifurcate the calculation of the amount of punitive damages from the remaining issues at trial. W.R. Grace & Co. Thus the majority is correct that the type of bifurcation sought by the appellants in the case was markedly different from the bifurcation sought by the defendants in W.R. Grace. However, the purpose of bifurcation, to prevent a jury from being unduly prejudiced, remains the same.
Prior to trial, the appellantsMs. Dessanti as owner of the vehicle and Mr. Dale as driver of the vehiclefiled a joint motion to bifurcate the trial and separate the estate's claim for the amount of punitive damages from the remainder of the case. For purposes of that motion both Ms. Dessanti and Mr. Dale were willing to admit not only that Mr. Dale was totally negligent, but also that the estate was entitled to recover punitive damages against Mr. Dale.
If the appellants' motion to bifurcate the amount of punitive damages had been granted, the only issue the jury could have decided during the first stage of the trial was the amount of compensatory damages. The reason is that the appellants admitted liability as to both compensatory and punitive damages and therefore there would not have been a disputed issue of fact for the jury to decide as to either issue. Thus, during the first stage of the trial, the jury would not have heard evidence that Mr. Dale was intoxicated,[2] since such evidence would not have been relevant as to compensatory damages. Anderson v. Amundson, 354 N.W.2d 895 (Minn.Ct.App.1984); Obercon v. Glebatis, 89 A.D.2d 762, 454 N.Y.S.2d 46 (N.Y.App.Div. 1982). Using the same logic, it would not have been admissible to prove liability for punitive damages, since the issue of such liability was conceded. Nor during the first stage of the trial would the jury have heard that Mr. Dale had left the scene of the accident, was driving at an excessive speed, or that Mr. Dale had invoked his Fifth Amendment right not to testify against himself.
Of course, during the second stage of the trial, the estate would have been permitted to introduce all of the above evidence concerning Mr. Dale's conduct in order for the jury to decide the proper amount of punitive damages which should be assessed against Mr. Dale. In addition, the jury would have been permitted to hear evidence concerning Mr. Dale's net worth. In this way the jury would not have been predisposed to punish Ms. Dessanti for the conduct of Mr. Dale.
The majority's position is that the failure of the trial court to bifurcate the amount of punitive damages from the remainder of the case was harmless error as to Mr. Dale. Their reasoning is that since Mr. Dale admitted entitlement to punitive damages, no financial information could poison the finding of liability for punitive damages against him. However, the majority have failed to address the harm suffered by Ms. Dessanti, when the trial court failed to bifurcate.[3] Nor has the majority addressed the harm suffered by her insurance company, U.S. Security, who is presently being sued by Ms. Dessanti in bad faith for $990,000, which is the amount of compensatory damages in excess of the policy limits.
As was stated by an Ohio appellate court,
It is the court's duty to see that verdicts are rendered which compensate for injuries. If a case warrants punitive damages, then such damages should be pleaded and proven, and not injected into a case through clever trial tactics and result in compensatory awards.
*849 Johnson v. Knipp, 36 Ohio App.2d 218, 304 N.E.2d 914, 918 (1973).
We have held on three separate occasions that the test for harmless error is whether, but for the error, a different result would have been reached. Pascale v. Federal Express Corp., 656 So.2d 1351 (Fla. 4th DCA), rev. denied, 666 So.2d 143 (Fla.1995); Aristek Communities, Inc. v. Fuller, 453 So.2d 547 (Fla. 4th DCA 1984); Anthony v. Douglas, 201 So.2d 917 (Fla. 4th DCA 1967), cert. denied, 210 So.2d 222 (Fla.1968). I cannot state that the jury would have awarded the estate $1 million in compensatory damages against Ms. Dessanti had the evidence concerning Mr. Dale's conduct not been submitted to the jury prior to it deciding the issue of compensatory damages.
I, therefore, would reverse and order a new trial and mandate that, based on the facts of this case, so long as the appellants continue to stipulate liability for both compensatory and punitive damages, that the issue of compensatory damages against Ms. Dessanti be bifurcated from the punitive damage claim against Mr. Dale.
NOTES
[1] Prior to trial, U.S. Security offered the plaintiff Dessanti's policy limits of $10,000, but the offer was rejected.
[2] We have held that when a defendant admits liability in an automobile negligence case, and the plaintiff is only seeking compensatory damages, it is error to permit the introduction of evidence that the defendant was intoxicated at the time of the accident. Neering v. Johnson, 390 So.2d 742 (Fla. 4th DCA 1980); see also Barton v. Miami Transit Co., 42 So.2d 849 (Fla.1949).
[3] Whether Ms. Dessanti, who was not being sued for punitive damages, has standing to argue that the court erred in failing to bifurcate the issue of punitive damages from compensatory damages has not been argued. As a result we need not address that issue in this decision.