745 So.2d 994 (1999)
FIRST BANK OF IMMOKALEE, n/k/a Florida Community Bank, Appellant,
v.
FARM WORKER'S CHECK CASHING, INC., Appellee.
Nos. 98-00584, 98-01563.
District Court of Appeal of Florida, Second District.
September 10, 1999.
Rehearing denied October 25, 1999.
*995 John E. Spiller of Boardman & Spiller, P.A., Immokalee, for Appellant.
Michael F. Beal, Naples, for Appellee.
DANAHY, PAUL W., (Senior) Judge.
First Bank of Immokalee challenges the final amended judgment in this case. The Bank raises ten issues on appeal. We agree with the Bank that the trial court erred in allowing Farm Worker's Check Cashing, Inc.'s (FWCC) claim for punitive damages on Counts I and II of their complaint to go to the jury. We affirm the final judgment as to all the other issues raised by the Bank, which we discuss only as they relate to the correctness of the punitive damage award.
The facts at trial showed that FWCC, as its name implies, was in the business of cashing paychecks for agricultural workers, such as fruit and vegetable pickers. FWCC retained a small percentage of each check as its fee for this service. FWCC had a checking account with the Bank. On Friday, February 24, 1995, employees of FWCC cashed seven checks written on the account of Gilliland Melons in the total amount of $2,002.52. Those checks were placed in the Bank's night depository that evening, were received by the Bank when it opened for business on Monday, February 27, and were paid by the Bank.
On the following Friday, March 3, FWCC cashed an additional eleven checks written on the same Gilliland Melons account in the amount of $3,357.67. These checks also were placed in the night depository and were received by the Bank on Monday, March 6. Five of these checks were paid by the Bank and credited to FWCC's account, but six were returned for insufficient funds. Three of the six checks, along with an advice of charge slip, were sent to FWCC at an address that was not yet operational. FWCC was moving its business office and had filed a change of address notice with the Bank which was not to be effective until March 31, 1995. It was disputed whether FWCC received the other three checks and the advice of charge slip at its current address or at the address which was to be effective March 31. Tom Clifton, the president of FWCC, testified at trial that he received *996 both envelopes around the 18th to the 20th of March at the address that was not yet in effect. On Friday, March 10, FWCC cashed thirty-nine more checks also drawn on the Gilliland Melons account totaling $13,433.10. These checks were received by the Bank on Monday, March 13. Prior to the checks being received, Gilliland Mellons had notified the Bank that these checks were forgeries. The Bank called and notified Clifton of the forgeries and returned the thirty-nine checks on March 14. The following day, the Bank returned the checks paid on February 27 and March 6. The provisional credit for the March 13 deposit was revoked by the Bank; in addition, the Bank withdrew funds from FWCC's account to reimburse itself for the forged checks it paid in the first two deposits.
FWCC filed an amended two-count complaint. Count I alleged that the Bank was liable for the checks that were paid on February 27 and March 6 and returned as forgeries on March 15. FWCC also alleged the Bank was liable for the six checks that were returned on March 7 for insufficient funds. FWCC sued under section 674.302(1), Florida Statutes (1993), which states that a bank is accountable for the amount of a check deposited with it, "whether properly payable or not," if it does not return the check prior to midnight of the banking day of receipt. In addition to the above claim for compensatory damages, Count I of the complaint included a claim for punitive damages. The basis of the punitive damage claim was that the Bank exhibited bad faith in taking the money from FWCC's account to pay itself back for all of the checks deposited by FWCC that were drawn on the Gilliland Melons account, including the provisional credit for the March 13 deposit. Count II alleged that had the Bank not negligently failed to comply with its statutory duty "to return the items or give notice of dishonor," FWCC would not have accepted the eleven Gilliland Melons checks it cashed on March 3 and the thirty-nine checks it cashed on March 10. Count II also contained a prayer for punitive damages which appears again to be based on the sums that the Bank withdrew from FWCC's account to reimburse itself for credits it had posted to that account.
The trial court granted partial summary judgment to FWCC on Count I with regard to the three checks received by the Bank on March 6 which were returned for insufficient funds because the undisputed evidence showed that these three checks were sent to the address that was not yet operational. The trial court did not err in so doing. Section 674.302(1) states that a bank is accountable for the amount of a check if it "does not ... return the item or send notice of dishonor" by the midnight deadline. Section 671.201, Florida Statutes (1993), contains the general definitions of the Uniform Commercial Code of which section 674.302 is a part. Section 671.201(38) states that: "`Send' in connection with any writing or notice means to deposit in the mail ... to an address specified thereon or otherwise agreed. ..." It goes on to state that the "receipt of any writing or notice within the time at which it would have arrived if properly sent has the effect of a proper sending." The three checks and advice of charge slip were not sent to the agreed-upon address, and Clifton's affidavit, attached to the motion for summary judgment, established he did not receive the items within the same time period he would have had they been sent to the proper address.
The jury determined that the other three checks that were returned for insufficient funds were also returned to the incorrect address and found the Bank liable for the amount of those checks. The jury also found the Bank liable for checks received by the Bank on February 27 and March 6, later determined to be forgeries, and which the Bank failed to return by the midnight deadline as mandated by section 674.302(1). With regard to Count II of the complaint, the jury found the Bank liable for the amount of the thirty-nine forged *997 checks under FWCC's theory that had the Bank not negligently failed to perform its statutory duty FWCC would not have cashed the checks. We are not convinced that such consequential damages are available under the Uniform Commercial Code. See § 671.106. However, the Bank did not argue this theory at trial or on appeal, but rather argued that the claim was barred by the economic loss rule and that it had no duty to forewarn FWCC regarding the status of the Gilliland Melons account. FWCC did not allege the Bank had a duty to forewarn. Furthermore, the economic loss rule "was primarily intended to limit actions in the product liability context, and its application should generally be limited to those contexts or situations where the policy considerations are substantially identical to those underlying the product liability-type analysis." Moransais v. Heathman, 744 So.2d 973, 983 (Fla. 1999). This is not the situation in the case before us.
The jury also awarded FWCC punitive damages in the amount of $50,000. The verdict form did not indicate whether the jury awarded punitive damages under Count I, Count II, or both counts. However, as we have noted, the basis for the punitive damage claims appears to be the same in both counts. We agree with the Bank that the trial court erred in allowing the issue of punitive damages to go to the jury. Section 671.106 states that special or penal damages may not be obtained "except as specifically provided in [the Uniform Commercial Code] or by other rule of law." We can find no support in the Uniform Commercial Code for the award of punitive damages under the circumstances of this case. Nor do we find any other basis in Florida law to support such an award. "Punitive damages are appropriate when a defendant engages in conduct which is fraudulent, malicious, deliberately violent or oppressive, or committed with such gross negligence as to indicate a wanton disregard for the rights of others." W.R. Grace & Co.-Conn. v. Waters, 638 So.2d 502, 503 (Fla.1994).
We hold that the Bank's actions in sending the notices of insufficient funds to the wrong address did not constitute fraudulent or malicious conduct, nor did it rise to the level of gross negligence. We likewise conclude that the action of the Bank in debiting FWCC's account for the amount of the forged checks that the Bank received on February 27 and paid on March 6 was neither fraudulent nor malicious because the record shows that the Bank was operating under the assumption that FWCC breached the warranty of presentment[1] with regard to those checks. Finally, the Bank's refusal to pay FWCC for the thirty-nine forged checks that formed the basis of the negligence claim in Count II was neither fraudulent nor malicious.
Accordingly, we reverse the award of punitive damages and remand to the trial court to strike that award. The final judgment is affirmed in all other respects.
Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.
BLUE, A.C.J., and STRINGER, J., Concur.
NOTES
[1] The jury rejected the Bank's affirmative defense that FWCC breached the warranty of presentment.