837 So.2d 483 (2002)
ST. PAUL MERCURY INSURANCE COMPANY, Appellant/Cross-Appellee,
v.
Linda COUCHER, etc., Appellee/Cross-Appellant.
No. 5D02-278.
District Court of Appeal of Florida, Fifth District.
December 27, 2002.
*484 John W. Weihmuller, David B. Krouk and Anthony J. Russo of Butler, Burnette, Pappas, LLP, Tampa, for Appellant/Cross-Appellee.
Lefferts L. Mabie, III, Tampa; Mark A. Avera, Gainesville, and Sharon H. Proctor, Avon Lake, Ohio, for Appellee/Cross-Appellant.
*485 ROUSE, R.K., Jr., Associate Judge.
St. Paul Mercury Insurance Company ("St. Paul") appeals an adverse $25,000 final judgment for uninsured motorist (UM) benefits entered after a jury trial. Linda Coucher, as Personal Representative of the Estate of Walter Luckner, cross appeals, complaining of the trial court's rulings on evidentiary issues.
Coucher is the daughter of decedent Walter Luckner and the personal representative of his estate. After a car crash, which resulted in the death of both of her parents, she brought this action against the underinsured tortfeasor driver, Margaret Licht, for compensatory and punitive damages, and against St. Paul and other insurers alleged to provide UM coverage.
The pleadings included St. Paul's admission that its policy provided UM benefits to decedents in the amount of $50,000 per incident. St. Paul's pretrial compliance also specifically conceded that its UM policy afforded "coverage to Walter Luckner with policy limits of $25,000 per person." The compliance further advised that Luckner's estate would be entitled to those UM benefits, provided that the amount of loss "exceeds all other available liability insurance coverage." (Emphasis supplied.) No other limitation with respect to St. Paul's obligation to pay the UM benefits was stated.
A settlement was reached with the other defendant insurers, and the case proceeded to trial against St. Paul and Licht.[1] Both St. Paul and Licht admitted that Licht caused the accident while intoxicated, and, two days before trial, Licht admitted that Coucher was entitled to recover punitive damages. Thus, the only remaining issues were the amount of compensatory damages and the amount of punitive damages.
Immediately before trial began, St. Paul renewed its pretrial motions for bifurcation, which had sought one trial on compensatory damages and a separate trial on all punitive damages issues. The trial court had denied those motions, but ordered that the case was to proceed to trial on the issues of compensatory damages and entitlement to punitive damages, followed by a separate consideration, by the same jury, to determine the amount of punitive damages. St. Paul contended that Licht's admission of liability changed the posture of the case, and argued that the jury would be unfairly influenced to award excessive compensatory damages if it was provided any knowledge of the co-defendant tortfeasor's intoxication. The trial judge denied the renewed motion to bifurcate, and permitted the intoxication issue to be discussed on voir dire and in opening statements.
Trial commenced, and the court read a statement of the case to the prospective jurors, which advised that St. Paul and Licht had admitted Licht's liability, and that Licht was intoxicated at the time of the accident. Several prospective jurors responded negatively when questioned about their opinions of drunk driving, but none of them were empaneled.
Immediately after the first witness testified, Licht's attorney announced outside the presence of the jury, that the punitive damages claim had settled for $500. Contending that a new jury should be selected, St. Paul moved for mistrial, which was denied. Trial continued, and evidence was presented on the issue of compensatory damages. No evidence was admitted of *486 any insurance other than that afforded by the St. Paul UM policy, and no mention was made of intoxication.
During closing arguments, Coucher's trial counsel made one reference to the prior punitive damages aspect of the action, stating: "It ought not to be the prerogative of those that, coming from their own negligence, unexpectedly, needlessly, and senselessly steal the life of a loved one to set the price of this kind of horrible loss." The court sustained St. Paul's objection to this decidedly improper argument, but St. Paul did not move for mistrial or request a curative instruction. Following closing arguments and the court's instructions, including a cautionary instruction advising that the punitive damage claim had been settled and should not be considered,[2] the jury returned its verdict finding $775,000 in compensatory damages.
St. Paul's timely motion for new trial was denied. St. Paul also filed a motion seeking a reduction of the verdict, raising for the first time the "other insurance" language of the policy.[3] St. Paul argued that this "other insurance" provision would limit Coucher's recovery to the $200,000 she had received in UM benefits from Luckner's Allstate Insurance Company policy, and, therefore, no judgment should be entered against it. Coucher responded that St. Paul waived that argument, and, in addition, that St. Paul had failed to prove that the insured had rejected "stacked" UM coverage. The trial court announced that it was rejecting St. Paul's arguments; however, St. Paul moved for reconsideration, attaching to its unsworn motion what appeared to be a UM selection/rejection form signed by Luckner. The trial court denied the motion for reconsideration, and entered judgment against St. Paul in the amount of its UM policy limits of $25,000.
St. Paul contends that the trial court erred in entering judgment against it, because the "other insurance" language in the policy should have been applied to preclude recovery of any UM benefits. We disagree, and hold that St. Paul waived any application of the "other insurance" clause by failing to timely raise the issue in the trial court.[4]
*487 Generally, a defense which is not pled in the answer or affirmative defenses is waived, and may not be raised for the first time in a post-trial motion. See Fla. R. Civ. P. 1.110 and 1.140(h); see also Republic Nat'l Bank v. Araujo, 697 So.2d 164, 166 (Fla. 3d DCA 1997) (holding argument based on economic loss rule waived when raised for first time in post-trial motions). An affirmative defense is a defense which admits the cause of action, but avoids liability, in whole or in part, by alleging an excuse, justification, or other matter negating or limiting liability. See Henry P. Trawick, Jr., Florida Practice & Procedure § 11-4, at 205 (2000 ed.)(citing Fla. E. Coast Ry. Co. v. Peters, 72 Fla. 311, 73 So. 151 (1916)). Ordinarily, an insurer's defense based on an exclusion in the policy should be raised as an affirmative defense. See, e.g., Fla. Farm Bureau Gen. Ins. Co. v. Ins. Co. of N. Am., 763 So.2d 429, 432 (Fla. 5th DCA 2000) ("Policy exclusions are generally pled as affirmative defenses.") (citing Peninsular Life Ins. Co. v. Hanratty, 281 So.2d 609 (Fla. 3d DCA 1973)).
The "other insurance" clause in this case is not a policy exclusion; its application does not result in a voiding or absence of coverage. Instead, when it applies, it reduces, limits or eliminates the recovery due with respect to a covered loss or occurrence. Although the "other insurance" language St. Paul seeks to have applied is not an exclusion, we conclude that the rationale which requires exclusions to be specifically raised in the pleadings also applies to such limiting language.
Pleadings frame the matters at issue. Parties are entitled to be fairly placed on notice of specific language which is sought to be applied by one party to a contract to avoid liability for payment, in whole or in part. This is especially true where, as here, an insurer has admitted coverage, and expressly stated that the claimant would be "entitled to [UM] benefits" where the loss exceeded available liability coverage. We further note that facts extrinsic to the insurance contract determine the application of the clause; it follows that the insurer should plead that which it bears the burden of proving. Requiring such defenses to be raised permits full discovery regarding the issues, reduces unfair surprise, and may result in earlier resolution of suits.
St. Paul relies on Reliance Mutual Life Insurance Company of Illinois v. Booher, 166 So.2d 222 (Fla. 2d DCA 1964) in support of its contention that its policy language should not be required to be pled as an affirmative defense. That case is distinguishable, however, because in Booher, the plaintiff's complaint for declaratory judgment affirmatively alleged all of the terms and conditions of the policy, and thus, the court held that the complaint brought into issue the time limitation provision upon which the insurer relied. Those facts are in marked contrast to the facts of this case, where all terms and conditions were not alleged by Coucher in her complaint, and the insurer specifically admitted coverage and Coucher's entitlement to UM benefits, provided that the amount of loss exceeded available liability insurance, which it concededly did.
The Booher court specifically declined to determine whether the time limitation at issue in that case was an affirmative defense. We hold that the "other insurance" clause of the St. Paul policy is an affirmative defense, and the failure to plead it in this case resulted in waiver. Although the trial court did not base its ruling on waiver, the ruling should be affirmed if it is correct on any basis. See Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644-45 (Fla.1999); *488 Home Depot U.S.A. Co., Inc. v. Taylor, 676 So.2d 479 (Fla. 5th DCA 1996).
St. Paul next contends that the trial court erred in denying St. Paul's request for bifurcation, mistrial, and new trial, arguing that the jury's knowledge of Licht's intoxication resulted in unfair prejudice to St. Paul. We hold that the trial court's decision not to bifurcate and its denial of the motion for mistrial was not an abuse of discretion entitling St. Paul to a new trial.
Florida Rule of Civil Procedure 1.270(b) governs the bifurcation of trials, and provides: "The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim ... or of any separate issue or of any number of claims ... or issues." Cases involving bifurcation uniformly provide that the trial court's decision to bifurcate is subject to an abuse of discretion standard of review. See Microclimate Sales Co., Inc. v. Doherty, 731 So.2d 856, 858 (Fla. 5th DCA 1999); Maris Distrib. Co. v. Anheuser-Busch, Inc., 710 So.2d 1022, 1024 (Fla. 1st DCA 1998); Hardee Mfg. Co. v. Josey, 535 So.2d 655, 656 (Fla. 3d DCA 1988).
The trial court followed the bifurcation protocol established by the Florida Supreme Court in W.R. Grace & Co. v. Waters, 638 So.2d 502 (Fla.1994). In Grace, the supreme court held that when there is a claim for punitive damages in a negligence action, the jury should hear evidence on negligence, compensatory damages, and liability for punitive damages in phase one, and then the same jury should determine the amount of punitive damages in phase two. Bifurcating in this manner will always result in a jury being questioned about, and hearing evidence of, alleged willful and wanton conduct in the same phase of the trial in which the jury is required to assess compensatory damages.
We cannot conclude that a procedure prescribed by the supreme court results in excessive and unfair compensatory damages verdicts. If that procedure is deemed to be not unfairly prejudicial to defendants charged with bad conduct, we must presume that it is certainly not unfairly prejudicial to co-defendants who are not charged with any bad conduct. This presumption survives, even when there is a settlement of the punitive damages claim during trial. We find that the trial court did not abuse its discretion when it followed the procedure described in Grace, or when it denied the motion for mistrial upon the settlement of the punitive damages claim during trial.
We have carefully considered St. Paul's two remaining issues on appeal and found them to also be without merit. Coucher's cross-appeal is moot.
AFFIRMED.
SHARP, W., J., concurs.
COBB, J., dissents with opinion.
COBB, J., dissenting.
This wrongful death action for the death of Walter Luckner, who was killed in an automobile accident, was brought by his daughter, Linda Coucher, seeking compensatory damages against St. Paul, a secondary uninsured motorist carrier for Luckner with $25,000 coverage[1], and punitive damages against the underinsured tortfeasor, Margaret Licht, who was intoxicated at the time of the accident. Liability was admitted in regard to each claim. Since *489 liability was not an issue, and because punitive damages were recoverable only from Licht and evidence of her intoxication admissible only against her, St. Paul filed a pretrial motion to bifurcate and in limine, seeking to sever the claim for damages against Licht from the claim for UM benefits against St. Paul and to exclude any evidence of drunk driving from the compensatory claim against St. Paul. The purpose of this motion was to prevent the jury in St. Paul's case from hearing any prejudicial evidence of Licht's intoxication, which had resulted in two deaths[2], and thereby be influenced and inflamed into awarding disproportionately high compensatory damages.
Although the trial court agreed with St. Paul's argument that the evidence of Licht's drunk driving was irrelevant and inadmissible in respect to the compensatory damage claim against St. Paul, the court refused to have two separate juries. Instead, the court provided for a two-phase trial with a single jury and prohibited evidence of Licht's intoxication during the first (or compensatory) phase of the trial, but permitted consideration of drunk driving matters during voir dire and opening statements. This strikes me as an illogical non-solution to the problem. It would have been simple to have avoided the problem with the use of two juries. Cf. Neering v. Johnson, 390 So.2d 742 (Fla. 4th DCA 1980).
The apprehensions of the defense were soon to be realized. Two days before trial, Licht answered and admitted Coucher was entitled to punitive damages. St. Paul's renewed motion to bifurcate was denied. Trial commenced and the court read a statement to the jury venire informing them that Licht was intoxicated at the time of the accident. During voir dire, reference was made to drunk driving. Immediately following the first witness's testimony, Licht's counsel announced to the court (outside the presence of the jury) that the punitive damage claim against Licht had been settled for $500. Licht was dismissed from the case and her counsel left the courtroom, leaving a solvent St. Paul to confront a tainted jury. Only someone fresh from Sunnybrook Farm could have been surprised by this maneuver. Nevertheless, St. Paul's immediate motion for mistrial was denied. Predictably, at closing argument, plaintiff's counsel attacked St. Paul with the following punitive damage argument:
It ought not to be the prerogative of those that, coming from their own negligence, unexpectedly, needlessly, and senselessly steal the life of a loved one to set the price of this kind of horrible loss.
Although objection to this argument was sustained, the skunk had already been thrown into the jury box.[3] The fact of the matter, of course, was that St. Paul, the only remaining party defendant, was not alleged to have committed any actionable negligence and the culpable wrongdoer, Licht, was long gone from the case at this point. The only negligence committed by St. Paul was in overlooking its coverage defense until it was too late to assert it. The jury returned a verdict of $775,000, whereupon judgment was entered against St. Paul for $25,000. This appeal ensued.
At oral argument of the case it was indicated that the instant case is a prelude to a bad faith action by Coucher against St. Paul for an amount predicated upon *490 the jury verdict below.[4] Such an action was created by a 1992 statute (section 627.727(10)), which greatly expanded the damages recoverable against an uninsured motorist carrier in a bad faith action. Now, the UM claimant may seek to recover any amount in excess of the policy limits awarded by a jury in the underlying claim. See State Farm Mut. Auto. Ins. Co. v. Laforet, 658 So.2d 55, 56 (Fla.1995).
I believe the trial court erred in denying separate trials with separate juries for the claims against Licht and St. Paul and again in denying a mistrial after Licht was dismissed from the case. The appellee's reliance on W.R. Grace & Co. v. Waters, 638 So.2d 502, 506 (Fla.1994) is misplaced. Grace is not applicable to the instant case because it dealt with bifurcation of the determination of punitive damages from the remaining issues at trial where only the defendant wrongdoer was sued. The purpose was to insulate the jury during the liability phase of the trial from evidence relevant only to the issue of the amount of punitive damages; that issue would become moot in the event the defendant prevailed in the first phase on that issue. In the instant case, we are dealing with multiple defendants, one of which, St. Paul, was not named in the count seeking punitive damages.
I would reverse and remand for a new trial wherein references to intoxication and punitive damages are excluded.
NOTES
[1] Other claims were settled in advance of trial, including Coucher's UM claim against St. Paul because of the wrongful death of Coucher's mother, which was settled for St. Paul's per person policy limits of $25,000.
[2] The trial court instructed the jury as follows:

The Court has determined and now instructs you as a matter of law that the intoxication and criminal conviction of Defendant Margaret Licht is not relevant and should not be considered to determine the amount of damages necessary to compensate the Plaintiff for the loss of her father.
The claim for punitive damages against Margaret Licht has been settled. Punitive damages should not be considered in determining the amount of compensatory damages necessary to compensate Linda Coucher for the loss of her father.
[3] OTHER INSURANCE

If there is other applicable similar insurance under this policy or any other policy:
1. Any recovery for damages sustained by you or any "family member":
b. While occupying a vehicle not owned by you or any "family member" may equal, but not exceed, the sum of:
(1) The limit of liability for Uninsured Motorists Coverage applicable to the vehicle you or any "family member" were occupying at the time of the accident; or
(2) The highest limit of liability for Uninsured Motorists Coverage applicable to any one vehicle under any one policy affording coverage to you or any "family member."
[4] We also observe that St. Paul did not at any stage of the proceedings properly establish the applicability of the "other insurance" clause to the facts of this case. For example, there was no proof of compliance with section 627.727(9), Florida Statutes (1996), and no showing that the Allstate policy's UM coverage was "other similar insurance." See Nationwide Gen. Ins. Co. v. United Services Auto. Ass'n, 715 So.2d 1119 (Fla. 1st DCA 1998).
[1] This coverage resulted from a waiver by St. Paul of an exclusion in its policy based upon the existence of other applicable UM coverage owned by Luckner in the amount of $200,000 and an anti-stacking provision. Unfortunately for St. Paul, it failed to detect this exclusion until after the trial, and it had already admitted coverage in the pretrial proceedings.
[2] Coucher's mother was also killed in the accident. That claim had been settled prior to trial of the instant case.
[3] See Superior Indus. Int'l, Inc. v. Faulk, 695 So.2d 376, 379 (Fla. 5th DCA 1997).
[4] See Blanchard v. State Farm Mut. Auto. Ins. Co., 575 So.2d 1289 (Fla.1991).