# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2023-2745
Lower Tribunal No. 2013-CA-012202-O

_____

CORY MCKINNEY,

Appellant,

v.

MICAH GRAHAM,

Appellee.

_____

Appeal from the Circuit Court for Orange County.
Emerson R. Thompson, Jr., Judge.

May 30, 2025

PALERMO, T.N., Associate Judge.

In our system of ordered liberty, a trial court may not act contrary to an appellate court's mandate. Acting in contravention of a mandate without seeking relief from the appellate court invites reversal. Cory McKinney appeals the final judgment entered for the plaintiff, Micah Graham, following a second trial in which McKinney's intoxication was featured in an unbifurcated proceeding, instead of only in the punitive phase of a bifurcated trial. The Fifth District Court of Appeal previously reversed on the issue of featuring the evidence of intoxication in the

compensatory phase, requiring the trial court to exclude the evidence from it. Rather than follow the Fifth District's mandate, the trial court erroneously un-bifurcated the proceeding and allowed evidence of McKinney's intoxication. Accordingly, we reverse and remand for a third trial. The third trial shall be bifurcated, without reference to intoxication in the compensatory phase. McKinney also has the right to challenge the claimed unliquidated damages at that trial.

The case began with a traffic accident. Graham, stopped at a red light, was rear-ended by McKinney, who was intoxicated. Graham instituted a negligence action against McKinney and, because of McKinney's intoxication, sought punitive damages against him. McKinney stipulated that he was liable for causing the accident and moved to bifurcate the proceedings. The trial court granted the bifurcation motion but failed to exclude evidence of intoxication from the compensatory phase. Graham seized on this opportunity. At trial, Graham addressed intoxication in his opening, during his case by admitting evidence of it, and in his closing. The trial court instructed the jury that McKinney was impaired and provided his blood alcohol level, which was substantially higher than the legal limit. The jury found that McKinney's admitted negligence caused Graham's injuries and awarded $2,630,226.91 in compensatory damages and then found McKinney liable for $15,000 in punitive damages.

Because that appeal predated this Court, McKinney appealed to the Fifth District. Among the issues raised, McKinney argued that the trial court erred in allowing the introduction of McKinney's intoxication despite his liability and punitive damages concessions. *McKinney v. Graham*, 313 So. 3d 867, 869 (Fla. 5th DCA 2021). The Fifth District agreed and reversed. The Fifth District explained that "bifurcation is proper when both compensatory and punitive damages are at issue." *Id.* (citing *W.R. Grace & Co.-Conn. v. Waters*, 638 So. 2d 502 (Fla. 1994)). For this reason, when a defendant admits liability and entitlement to punitive damages, evidence of the defendant's intoxication may not be introduced in the compensatory damages phase as the evidence is irrelevant and serves only to inflame the jury to increase the compensatory damages award. *McKinney*, 313 So. 3d at 869–71. The Fifth District found that this was "an intentional strategy on behalf of Graham." *Id.* And it commented that "[s]uch strategy is precisely why courts have excluded intoxication evidence until the jury is called upon to consider such conduct in assessing the amount of punitive damages." *Id.* at 871. The Fifth District then held that "the trial court erred in allowing the presentation of McKinney's intoxication" during the compensatory phase of the trial and remanded for a new bifurcated trial. *Id.*

On remand, the case proceeded inexorably to trial, including with additional discovery. Graham filed a motion for sanctions for fraud upon the court based on

McKinney's lies during discovery. The trial court, via a successor judge, granted the motion, struck McKinney's pleadings and defenses, and ruled that the "trial w[ould] proceed on a determination on the amount of damages thus caused to [Graham]." The case was ostensibly still to proceed as a bifurcated proceeding consistent with the prior trial orders and the Fifth District's mandate.

McKinney moved to reconsider the sanctions order. A second successor judge denied the motion and interpreted the order far broader than its text, precluding McKinney from challenging the merits of any remaining issues in the case or presenting any evidence at trial.

Graham then moved to quash the predecessor judge's prior orders bifurcating the trial, arguing that the sanctions order, which struck McKinney's pleadings and defenses, also necessarily struck McKinney's motion to bifurcate the trial, rendering the prior bifurcation orders void and the Fifth District's mandate moot. The second successor judge granted the motion and quashed the bifurcation orders, ruling both compensatory and punitive damages would be addressed in an un-bifurcated trial.

At the second trial, only Graham was allowed to present evidence. McKinney was permitted only limited cross-examination of Graham's witnesses. McKinney was precluded from presenting any mitigating evidence about compensatory or punitive damages claims. The trial court then directed a verdict for Graham on the issues of injury causation, permanency of injuries, and past medical expenses.

4

During trial, Graham executed the exact strategy condemned by the Fifth District. He again presented extensive evidence and argument about McKinney's intoxication to inflame the jury to inflate the compensatory damages awarded. The jury returned a verdict for Graham, awarding $18,132,308.85 in compensatory damages and $10,000,000 in punitive damages, a verdict seven times greater than the first compensatory damages verdict and more than 600 times greater than the first punitive damages verdict.

On appeal again, McKinney raises several issues, two of which merit discussion: first, whether the trial court failed to comply with the Fifth District's mandate by un-bifurcating the retrial; and second, whether the trial court improperly prevented McKinney from challenging the extent of claimed unliquidated damages.

## I.     Failure to Comply with the Mandate

The failure to comply with the Fifth District's mandate requires reversal. A mandate communicates the appellate court's judgment to the lower court and directs the lower court's action. *Tierney v. Tierney*, 290 So. 2d 136, 137 (Fla. 2d DCA 1974). A reversal with general directions vests a trial court with broad discretion in how to handle the case. *Lucom v. Potter*, 131 So. 2d 724, 726 (Fla. 1961). A remand with specific instructions, however, constrains the trial court to act in accordance with the instructions, and it cannot exceed the specific bounds of those instructions. *See Collins v. State*, 680 So. 2d 458, 459 (Fla. 1st DCA 1996) (citing *St. Joe Paper*

*Co. v. Adkinson*, 413 So. 2d 107, 108 (Fla. 1st DCA 1982)). General or specific, the lower court may not deviate from the appellate court's mandate without permission to do so. *See, e.g.*, *Cone v. Cone*, 68 So. 2d 886, 887 (Fla. 1953); *Ketcher v. Ketcher*, 198 So. 3d 1061, 1063 (Fla. 1st DCA 2016); *Mendelson v. Mendelson*, 341 So. 2d 811, 813–14, 814 n.6 (Fla. 2d DCA 1977); *Bryan & Sons Corp. v. Klefstad*, 265 So. 2d 382, 386 (Fla. 4th DCA 1972). No permission was sought from the Fifth or Sixth District to deviate from the mandate.

There are limited exceptions to this broad and important rule. One exception is when an intervening decision by a higher court supersedes the legal basis of the appellate court's mandate before the trial court's judicial labor is complete. The trial court may then disregard the mandate to comply with the new legal standards. *See Rembert v. State*, 300 So. 3d 791, 794 (Fla. 1st DCA 2020) (holding that trial court may disregard appellate court mandate when it is "undoubtedly certain that the basis for that mandate has been subsequently overruled before the trial court can comply with the mandate"). Another exception is when strict and rigid adherence to the previous decision would result in a manifest injustice. *Strazzulla v. Hendrick*, 177 So. 2d 1, 4 (Fla. 1965). Similarly, the law-of-the-case doctrine does not apply if a later hearing or trial develops different facts and issues. *Steele v. Pendarvis Chevrolet, Inc.*, 220 So. 2d 372, 376 (Fla. 1969).

None of these limited exceptions apply here. There is no intervening decision, no argument that adherence to the prior decision would result in a "manifest injustice," and no new facts or issues that would justify deviation from the Fifth District's mandate. The sanctions order striking McKinney's pleadings and defenses did not render the prior orders bifurcating the trial void. It also did not permit the trial court to violate its obligation to comply with the Fifth District's mandate.[1] Likewise, it did not give the trial court authority to deviate from the mandate. We, therefore, hold that McKinney is entitled to a new bifurcated trial where the evidence of intoxication is advanced only during the punitive phase.

## II.     Right to Challenge Unliquidated Damages and Causal Relationship

At that new bifurcated trial, McKinney must also be permitted to challenge the evidence advanced against him about the amount of unliquidated damages, which include the causal relationship between liability and the claimed unliquidated damages.[2] McKinney was properly sanctioned, and that sanction included default.

---

[1] While McKinney's pleadings and defenses were stricken, the trial was bifurcated on a motion. A motion is neither a pleading nor a defense. *See* Fla. R. Civ. P. 1.100(a)&(b); Fla. R. Civ. P. 1.110(a)–(d). A motion might advance a defense, but it remains a motion. *See* Fla. R. Civ. P. 1.140(b).

[2] The damages at issue are unliquidated. Damages are liquidated when the amount sought "can be determined with exactness" from an agreement, by an "arithmetical calculation," or "by application of definite rules of law." *Bowman v. Kingsland Dev., Inc.*, 432 So. 2d 660, 662 (Fla. 5th DCA 1983). On the other hand, damages are unliquidated "if the ascertainment of their exact sum requires the taking of testimony to ascertain facts upon which to base a value judgment." *Id.* at 663. The

7

When a default is entered, the defaulting party admits the complaint's well-pled factual allegations, but the defaulted party may still contest the amount of unliquidated damages caused by the party's wrong. *Donohue v. Bightman*, 939 So. 2d 1162, 1164–65 (Fla. 4th DCA 2006); *see also Harless v. Kuhn*, 403 So. 2d 423, 425 (Fla. 1981) ("When a default is entered . . . a party has the right to contest damages caused by his wrong but no other issue."); *Rodriguez-Faro v. M. Escarda Contractor, Inc.*, 69 So. 3d 1097, 1098 (Fla. 3d DCA 2011) ("In Florida, it is well settled that a defaulting party is entitled to notice and an opportunity to be heard when the amount of damages is unliquidated.").

"[T]he purpose of compensatory damages is to compensate, not to punish defendants or bestow a windfall upon plaintiffs." *MCI Worldcom Network Servs., Inc. v. Mastec, Inc.*, 995 So. 2d 221, 224 (Fla. 2008) (quoting *Coop. Leasing, Inc. v. Johnson*, 872 So. 2d 956, 958 (Fla. 2d DCA 2004)); *see also Hanna v. Martin*, 49 So. 2d 585, 587 (Fla. 1950) ("The fundamental principle of the law of damages is that the person injured . . . by wrongful or negligent act or omission shall have fair and just compensation commensurate with the loss sustained in consequence of the defendant's act which [gave] rise to the action. In other words, the damages awarded should be equal to and precisely commensurate with the injury sustained."). As a

---

amount of damages to Graham require ascertaining facts to determine a value, and so the damages are unliquidated.

result, McKinney had the right to offer mitigating evidence on the causal relationship between liability and the amount of claimed unliquidated damages because Graham was still required to prove that causal link. *See ICMfg & Assocs., Inc. v. Bare Bd. Grp., Inc.*, 238 So. 3d 326, 335–36 (Fla. 2d DCA 2017) (holding that defaulted party had right to contest causation of claimed unliquidated damages despite default and that trial court erred in preventing defaulted party "from demonstrating that [the] claimed business losses were not as great as [] claimed or were attributable—in whole or in part—to other causes"); *Talucci v. Matthews*, 960 So. 2d 9, 10 (Fla. 4th DCA 2007) ("The right to contest unliquidated damages in any negligence action encompasses the right to challenge the causal relationship between the damages claimed and the liability established by the default.").

We, therefore, reverse and remand for a new bifurcated trial consistent with this opinion.

REVERSED and REMANDED.

STARGEL and SMITH, JJ., concur.


Peter D. Webster, of Carlton Fields, Tallahassee, and Paul L. Nettleton, Jeffrey A. Cohen, and Katarina Dobsinska, of Carlton Fields, Miami, for Appellant.

Dinah S. Stein, of Hicks, Porter, Ebenfeld & Stein, P.A., Miami, and Jeffrey M. Byrd, of Jeffrey M. Byrd, P.A., Orlando, for Appellee.


NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED