472 So.2d 482 (1985)
Joan DONAHUE, Appellant,
v.
ALBERTSON'S INC., Appellee.
No. 84-651.
District Court of Appeal of Florida, Fourth District.
June 5, 1985.
Rehearing Denied July 31, 1985.
G. William Bissett of Preddy, Kutner & Hardy, Miami, for appellant.
Barbara J. Compiani of Edna L. Caruso, P.A., and Montgomery, Lytal, Reiter, Denney & Searcy, P.A., West Palm Beach, for appellee.
HURLEY, Judge.
Joan Donahue was injured when a store's automatic door closed abruptly. She sued the owner and lost. On appeal, she contends that the trial court erred by excluding evidence of two incidents involving the door which occurred after the accident, but which corroborate her theory of negligence. We reverse.
Ms. Donahue was injured while exiting through an automatic door at Albertson's liquor store. The door was approximately two-thirds of the way through its opening cycle when it suddenly kicked back and seriously injured her left arm. At trial, Ms. Donahue claimed that the door's premature closing was caused by a malfunction in a small unit called a breakaway switch.
To appreciate the significance of the breakaway switch and its relationship to this litigation, one must first take into account an unusual feature of Albertson's doors. The double automatic doors operate in a "reverse traffic flow pattern," i.e., traffic flows to the left, not to the right. *483 When facing the doors from outside the store, customers must enter through the door on their left. Similarly, when leaving the store, customers must exit through the door on their left. Testimony at trial indicated that Albertson's customers were often confused by the reverse traffic flow design and frequently attempted to enter through the exit door. Customers would push the exit door inward which caused the top of the door frame to slam into the breakaway switch.
The breakaway switch is a small plastic unit situated in the frame above the door, i.e., in the "header." When the door is closed, a portion of the switch protrudes down from the header and rests against the inside of the top of the door. The door opens away from this protruding portion of the switch. During the normal operation of the door, i.e., when people are exiting and not attempting to enter, the door never hits the breakaway switch with any significant force; it merely returns and rests against it.
One of the main issues at trial was whether the customers' repeated attempts to enter by the wrong door affected the breakaway switch. Donahue argued that the persistent pushing of the door in the wrong direction caused the top of the door to slam into the protruding portion of the breakaway switch which, in turn, jarred the entire switch. Further, she claimed this continuous abuse of the breakaway switch loosened the electrical connections within the switch. Donahue's expert witness testified that a loose connection in the breakaway switch would cause the automatic door to operate intermittently  "like a loose light bulb." Such intermittent operation would cause the door to close prematurely, which is exactly how Donahue claims the accident occurred.
Albertson's disputed Donahue's theory of causation. Albertson's expert testified that the impact caused by pushing the exit door in the wrong direction would have an "immeasurably small" effect on the breakaway switch and could not possibly loosen its circuitry. To counter this testimony, Donahue attempted to show that the pattern of slamming was so persistent and forceful that in April, two months after the accident, a fifty-pound spring in the breakaway switch snapped, requiring replacement of the entire unit. Additionally, she attempted to show that in July, approximately four months after the accident, the door's metal frame had to be repaired; it was actually bent as a result of continually slamming into the breakaway switch. The trial court excluded this evidence on the ground that it was "too remote." We cannot agree.
Evidence can be either remote in time or remote in the sense of being too attenuated, i.e., not relevant. In either case, "evidence is remote only when there is no visible, plain, or necessary connection between it and the proposition eventually to be proved." NLRB v. Ed Chandler Ford, Inc., 718 F.2d 892, 893 (9th Cir.1983). Evidence which presents purely collateral issues which would only serve to confuse and mislead the jury is too remote and should be excluded. Atlantic Coast Line Railroad v. Campbell, 104 Fla. 274, 139 So. 886 (1932). The converse of this rule is embodied in the maxim that evidence which assists in making known the truth upon an issue in question should be admitted. See City of Miami Beach v. New Floridian Hotel, Inc., 324 So.2d 715 (Fla. 3d DCA 1976); see also Steiger v. Massachusetts Casualty Insurance Co., 273 So.2d 4 (Fla. 3d DCA 1973) (plaintiff is entitled to present evidence on the facts that are relevant to his theory of the case). Thus, "[t]he test of inadmissibility is lack of relevancy." Kapchuck v. Orlan, 332 So.2d 671, 672 (Fla. 3d DCA 1976).
In the case at bar, Donahue claimed that the abrupt closing of the door was caused by a loose connection in the breakaway switch which, in turn, was caused by the repeated slamming of the door against the breakaway switch. In our view, evidence of the severity of the slamming and the consistency of this pattern of abuse was relevant to support Donahue's theory of negligence. The excluded evidence *484 showed that in April, just two months after Donahue's accident, the fifty-pound spring in the breakaway switch snapped. The repairman testified, and Albertson's concedes, that frustrated attempts to enter through the exit door caused the spring to break. The fact that the door was slammed into the switch with such force to snap the switch's fifty-pound spring is demonstrative of the severity of abuse and tends to support Donahue's theory that continuous slamming would jar loose the switch's circuitry. Moreover, proof of the April incident contradicts Albertson's expert testimony that the force of the impact was "immeasurably small." Similarly, the July incident graphically demonstrates that the slamming was forceful enough to dent the metal door frame which repeatedly made contact with the plastic switch.[1]
It seems to us that evidence concerning the April and July incidents is directly relevant to, perhaps even determinative of, a central issue in the case. Thus, we hold that the trial court abused its discretion by excluding this evidence, for if evidence "is relevant and has some degree of probative value, however small, it is admissible, and its weight is for the jury." Mason v. Stengell, 441 S.W.2d 412, 416 (Ky.App. 1969); see also Hopkins v. McClure, 45 So.2d 656 (Fla. 1950); Holliday v. State, 389 So.2d 679 (Fla. 3d DCA 1980).
Reversed and remanded for new trial.
ANSTEAD, C.J., and SALMON, MICHAEL H., Associate Judge, concur.
NOTES
[1] Although the proffered evidence about the April and July incidents involved a showing of subsequent repairs, such evidence was not inadmissible under section 90.407, Florida Statutes (1983), because neither repair would have made the injury less likely to occur. See generally White Construction Co. v. Dupont, 455 So.2d 1026 (Fla. 1984); Voynar v. Butler Manufacturing Co., 463 So.2d 409 (Fla. 4th DCA 1985).