731 So.2d 856 (1999)
MICROCLIMATE SALES CO., INC., et al., Appellants,
v.
Brian DOHERTY, et al., Appellees.
No. 97-2725.
District Court of Appeal of Florida, Fifth District.
May 14, 1999.
Michael R. Levin of Rumberger, Kirk & Caldwell, P.A., Orlando, for Appellants.
No Appearance for Appellees.
DAUKSCH, J.
This is an appeal from a judgment in a case involving alleged infringement upon patent license rights.
Appellants have a license from a patent holder to manufacture and sell cooling garments for use by firefighters and others. The garments are constructed to contain pockets of a chemical coolant to prevent overheating of the wearer when in high-heat environments.
The lawsuit against appellees involved the manufacture and sale of similar garments by appellees. Appellants say those garments contain the same, or virtually the same, chemical compounds and the sale of those garments infringes upon the exclusive rights of appellants. Appellees say the chemical compound is different and there is no violation. The critical question evolved to be the temperature at which the chemical compound of each of them turned from solid to liquid, and vice versa. That is, the freezing and melting point. After all the pretrial discovery had been completed *857 and the positions of all parties were set, it was deemed appropriate by the trial judge to empanel a jury to try a single decisive issue: the melting point of the chemical in the vest manufactured by appellees. Appellants' lawyer agreed in a pretrial hearing that the entire case turned on this issue.
THE COURT: Let me ask you something, Mr. Levin, and I've been trying to assimilate all this stuff, but it seems like the whole thing turns, as you say, on the melting point of [appellee's] product; correct?
APPELLANTS' ATTORNEY: Yes, sir.
THE COURT: If it is 50 degrees then what they are doing is fine.
APPELLANTS' ATTORNEY: Right.
THE COURT: If it's 60 degrees, they have a problem.
APPELLANT'S ATTORNEY: Right.
* * *
THE COURT: Doesn't that seem like that fact ought to be determined first?
APPELLANTS' ATTORNEY: Yes, sir.
* * *
THE COURT: I'm coming back to this 50 versus 60 [degrees] again. Again, that's the key fact.
APPELLEES' ATTORNEY: Right.
APPELLANTS' ATTORNEY: Yes, sir.
* * *
THE COURT: I'm just talking at some point in time a finder of fact is going to have to determine that this is either 50 or 60 [degrees] or whatever.
APPELLANTS' ATTORNEY: Exactly.
Appellants' lawyer did voice certain concerns when faced with the possibility of bifurcation, but his argument in opposition was largely unintelligible.
THE COURT: Tell me [why we shouldn't bifurcate]. I would like to know.
APPELLANTS' ATTORNEY: Because it's the same reason that we're trying to have all these procedural road blocks. [appellee's] position in the marketplace, this is the time of year they are selling. This is when they are selling. This is whenthis is right now. It's the hot. It's a cooling product.
* * *
APPELLANTS' ATTORNEY: The reason why you shouldn't bifurcate it is we're allowed to seek discovery on damage issues. This information is necessary and relevant, the discovery regarding customers is relevant to our damage claim.
The discovery regarding how they manufacture the product is relevant to this 50 degree issue. Both sides they claim trade secret. You don't get to the issue of whether you should bifurcate unless they meet their burden to show they have some reason for not producing this stuff in the first place, that they have some privilege ...
The question for this court to decide is whether the trial court abused its discretion in bifurcating the melting point issue from all other necessary elements to be proved by appellants. Appellants assert that discretion was abused.
Relying on Weasel v. Weasel, 419 So.2d 698 (Fla. 4th DCA 1982) and its progeny, appellant contends that "[a] court's power to bifurcate should be exercised with caution, and only in exceptional circumstances." However, the "exceptional circumstances" standard stated in Weasel has only appeared in opinions reviewing the bifurcation of dissolution and alimony issues in dissolution of marriage actions and has not been extended to civil damages cases. See, e.g., Claughton v. Claughton, 393 So.2d 1061, 1062 (Fla.1980). We conclude that the rule stated in Weasel involves practical concerns that are peculiar *858 to dissolution actions and not relevant to the instant appeal.[1]
The plain language of Rule 1.270(b), Florida Rules of Civil Procedure, states a much more liberal standard than is suggested by appellant:
The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, crossclaim, counterclaim, or third-party claim or of any separate issue or of any number of claims, crossclaims, counterclaims, third-party claims, or issues.
(emphasis added). Florida courts have long held that review of a trial court's exercise of Rule 1.270 powers will not be reversed absent an abuse of discretion. Department of Trans. v. Powell, 721 So.2d 795, 797-98 (Fla. 1st DCA 1998); Bernstein v. Dwork, 320 So.2d 472, 474 (Fla. 3d DCA 1975); Sall v. Luxenberg, 313 So.2d 775, 776 (Fla. 4th DCA 1975). Further, bifurcation is generally proper absent a specific threat of inconsistent verdicts or prejudice to a party. See, e.g., Diamond v. Whaley, Chapman & Hannah, M.D.'s, 550 So.2d 54 (Fla. 2d DCA 1989)(severance of issues proper where inconsistent verdicts "do not appear inevitable"); Luxenberg, 313 So.2d at 776 (abuse of discretion to separate trials where issues "entwined and intermingled").
We conclude that the trial court did not abuse its discretion in ordering a separate trial on the melting/freezing point of appellees' product. The defining characteristic of appellants' licensed product was its 60 degree melting point. This melting point is emphasized, along with the attendant benefits, throughout the patent document, appellants' amended complaint, and the initial brief. Each of the claims in appellants' amended complaint alleges damages arising from appellees' manufacturing and selling a product with the same characteristics as those covered by appellants' patent license. It follows that judgment for appellants in the action below was predicated on a jury finding that appellees' product had a melting temperature comparable to the technology covered by the patent.
Appellants also conceded that all claims turned on the melting and freezing temperature of appellees' product. If all claims turned on this issue, then there was no threat of inconsistent verdicts. Nor do we find any prejudice, either real or implied, resulting from the separate trial on this issue. It appears from the record that the issue was fairly tried, with the jury hearing extensive expert testimony from both sides on complex scientific principles. Finally, the record indicates that the trial court exercised its discretion and ordered the matter bifurcated in the interest of convenience and judicial economy. Both sides indicated that appellees' liability turned on the melting point issue, and that a trial on the issue could be quickly concluded. The court also considered factors weighing against bifurcationsuch as duplicative testimonybefore bifurcating. There was no abuse of discretion. We find no reversible error regarding the jury instructions or the judge's comments to the jury.
In closing, we note that appellants did assert a questionable defamation claim based on allegations that appellees published false statements regarding the validity of the underlying patent. This claim, if valid, would not have been resolved by the appealed judgment. Nonetheless, we conclude that the issues raised by the defamation claim are distinct from those at bar, and that the order of bifurcation *859 did not raise the threat of inconsistent verdicts or prejudice to either party. We make no decision on the sufficiency of the pleadings to support that claim. In the interest of judicial economy, the defamation claim is best handled on remand rather than reversing the appealed judgment for a plenary trial on all matters. We reverse the judgment insofar as it disposes of the defamation claim.
AFFIRMED in part; REVERSED in part; REMANDED.
HARRIS and ANTOON, JJ., concur.
NOTES
[1] The Weasel court noted that the wife might be prejudiced between the two trials by any of the following events: "a. death of husband; b. re-marriage of husband; c. the husband encumbers, conceals or disposes of his property." Weasel, 419 So.2d at 699. Similarly, the supreme court in Claughton v. Claughton, 393 So.2d 1061, 1062 (Fla.1980) stated in dicta that "[t]his split procedure should be used only when it is clearly necessary for the best interests of the parties or their children. The convenience of one of the parties for an early remarriage does not justify its use." Id. at 1062.