810 So.2d 516 (2001)
Mindy ROSEMAN, Appellant,
v.
TOWN SQUARE ASSOCIATION, INC., a Florida corporation, Appellee.
No. 4D00-1072.
District Court of Appeal of Florida, Fourth District.
December 5, 2001.
Opinion on Denial of Rehearing March 13, 2002.
*518 Dan Cytryn of Law Offices Dan Cytryn, P.A., Tamarac, for appellant.
Richard A. Sherman and Rosemary B. Wilder of Law Offices of Richard A. Sherman, P.A., and R. David Ravine of Law Offices of Robert F. Tacher, Fort Lauderdale, for appellee.

ON MOTION FOR REHEARING
WARNER, J.
We grant the motion for rehearing and clarification. We withdraw our previously issued opinion and substitute the following in its place.
In her appeal from a judgment in favor of appellee condominium association in a premises liability case, appellant contends that the trial court erred in bifurcating the issues and trying only liability to the jury first. She also alleges error in the trial court's refusal to permit her to offer evidence of subsequent repairs, refusal to permit appellant's expert to testify regarding procedures that the condominium association should have implemented with respect to the premises, and failure to give a particular jury instruction. We affirm on all issues, holding that the trial court did not abuse its discretion in granting the bifurcation, refusing to permit certain testimony, and denying the requested jury instruction which was not supported by the pleadings or the evidence.
Appellant, Mindy Roseman, claimed to have suffered injuries when the front door at appellee's condominium complex closed quickly, striking her on the back. Specifically, she alleged that the door was not properly maintained and that appellee *519 failed to warn her of this dangerous condition. Prior to trial, appellee moved for bifurcation of liability and damages, alleging that bifurcation would conserve judicial resources. In the motion, it noted that Roseman had listed thirty-two witnesses on damages, with nine being experts. Only four experts were listed on liability. The trial court granted appellee's request, ordering that both portions would be tried before the same jury. On Roseman's motion to clarify, the court directed that the jury would determine whether "there was negligence on the part of Town Square Association which was a legal cause of the door striking Mindy Roseman." Although Roseman later moved for rehearing on the issue, it does not appear that the issue was addressed again.
At a pretrial hearing, Roseman proffered the testimony of an expert in condominium management. He was prepared to render opinions on whether appellee should have placed a written notice on the door stating the door should not be adjusted and whether appellee should have ensured the door was closing at a safe pace. The court determined that these were not matters of expert opinion but were matters within the common knowledge of the jury. However, Roseman was free to argue such theories to the jury.
During trial, Roseman called several witnesses who either visited or lived at the condominium complex. Their testimony established that the door was heavy and "pretty much slammed closed." Roseman also called a door expert who conducted several tests on the closing speed of the door and opined that the door closing mechanism was set at a speed that caused it to close too quickly. In addition, Roseman called Roger Tuttle, a locksmith who performed work on the door approximately eight months after the accident. In a proffer outside the presence of the jury, Tuttle stated that he performed adjustments on the "door closer" on several occasions thereafter. He also stated that he suspected the condominium residents were adjusting the door, so he put a sticker over the screws. When he returned for additional work, he noticed that the stickers had been removed or penetrated. One of the members of the condominium's board of directors told Tuttle that he had experienced continuous problems with the door.
After the proffer, the trial court ruled that Tuttle could not testify that he suspected the residents were adjusting the door screws because Tuttle could not testify that he saw them adjust it before the accident. Tuttle also was not permitted to testify about his own adjustments to the door after the accident. However, he was allowed to testify as to the director's statement about the door problems. Later, appellee read portions of the director's deposition to the jury which indicated the director was not aware of whether the door closer had been replaced. Based upon this statement, Roseman contended that appellee had opened the door to evidence of subsequent repairs. Although the trial court disagreed, it told Roseman that she could use such evidence to impeach the director's testimony that no repairs were made.
At the close of the trial, the trial court read the standard jury instruction on premises liability and refused to include Roseman's requested instruction that the jury should determine whether appellee negligently created a dangerous condition. The case was submitted to the jury, which returned a verdict finding no liability on behalf of appellee.

Bifurcation
Florida Rule of Civil Procedure 1.270(b) governs the bifurcation of trials and provides: "The court in furtherance of convenience or to avoid prejudice may order *520 a separate trial of any claim, crossclaim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, crossclaims, counterclaims, third-party claims, or issues." Roseman makes a broad argument that bifurcation should not be permitted in personal injury cases, except in rare circumstances, and requests this court to certify this question to the supreme court as one of great public importance.
Cases involving bifurcation make two principles of law evident. First, the trial court's decision to bifurcate is subject to an abuse of discretion standard of review. See Microclimate Sales Co. v. Doherty, 731 So.2d 856, 858 (Fla. 5th DCA 1999); Maris Distrib. Co. v. Anheuser Busch, Inc., 710 So.2d 1022, 1024 (Fla. 1st DCA 1998); Hardee Mfg. Co. v. Josey, 535 So.2d 655, 656 (Fla. 3d DCA 1988). Second, "bifurcation is generally proper absent a specific threat of inconsistent verdicts or prejudice to a party." Microclimate Sales Co., 731 So.2d at 858; see also Hardee Mfg. Co., 535 So.2d at 656 (holding there is no abuse of discretion in denying a motion to bifurcate liability and damages in a personal injury case where "factors concerning the cause and nature of the injuries would, unavoidably, have been adduced at a separate trial on liability").
Where a court has disapproved bifurcation in a personal injury case, it has been grounded on the necessity to have evidence of injury to prove or explain some issue in the liability trial. See, e.g., Scandinavian World Cruises Bah., Ltd. v. Barone, 573 So.2d 1036, 1037 (Fla. 3d DCA 1991). In Barone, the court held that bifurcation was improper because the plaintiff was prejudiced on the issue of liability. During the liability trial, the trial court excluded evidence that the plaintiff suffered an organic brain injury as a result of the accident. This evidence "was necessary to explain certain confusing and inconsistent testimony of the plaintiff, including a glaring inconsistency as to where the plaintiff had slipped and fallen on the defendant's cruise ship." Id.
Unlike Barone, the injuries suffered by Roseman were not intertwined with the issue of whether appellee negligently maintained the subject door. Roseman testified that she was struck on her shoulder. Although she claims the evidence of her medical treatment shortly after the event would buttress her credibility, those facts are immaterial to the liability issues of negligent maintenance or failure to warn of a dangerous condition. The defense's theory was that the door was neither negligently maintained nor a dangerous condition. Therefore, the extent of Roseman's injuries were not a factor in determining liability. We have read the portions of the transcript provided on this appeal and cannot determine that the issues are inextricably intertwined such that the bifurcation prejudiced Roseman.
Roseman's main concern is that jurors would be dissuaded from performing their duties impartially because they could end their service early by agreeing on a defense verdict. That way, the time spent listening to damage testimony and deliberating could be avoided. She claims this was particularly true in the instant case where the trial was held shortly before Christmas, and in voir dire, some jurors expressed a concern for service during the holiday weeks. To reverse based upon these concerns would tread on the discretion of the trial judge who conducted the trial, saw the juror's reactions, and could control the conduct of the trial. Further, it would show a considerable distrust for the validity of our most fundamental legal institution, the jury. We would be presuming that the jury would do the wrong *521 thing simply to suit their own convenience. We can make no such presumption.
Roseman cites to Stecher v. Pomeroy, 253 So.2d 421, 424 (Fla.1971), for the proposition that absent an issue relating to insurance, the trial court should not bifurcate damages from liability. That case is not helpful because it relates to bifurcating issues of insurance from other issues at a time when insurance companies were routinely named as parties in negligence actions, and Stecher was clearly referring to severance in those cases where an insurance defendant is moving for severance. Stecher has never been cited for the proposition suggested by Roseman.
We conclude that the law is well settled that bifurcation is subject to the sound discretion of the trial court. There is no abuse of that discretion in this case. While Roseman suggests that the trial court should be required to set forth factual findings supporting its order of bifurcation, rule 1.270 requires no such findings. Without a rule requiring them, we are not inclined to compel the trial court to provide written findings for its ruling.

Evidentiary Issues
With respect to the exclusion of Tuttle's proffered testimony that he suspected residents were adjusting the door themselves, the trial court excluded the evidence because Tuttle did not actually see anyone adjust the door. Section 90.604, Florida Statutes (1999), prohibits testimony by a witness who does not have personal knowledge of a matter. In this case, Tuttle was first called to the condominium on a door problem about eight months after the incident causing Roseman's injuries. Tuttle did not have personal knowledge that the door was actually adjusted, let alone by whom the door was adjusted, particularly prior to the accident. The trial court's exclusion of this evidence was not an abuse of discretion.
Secondly, Roseman argues the evidence of Tuttle's adjustments to the door after the incident was admissible to impeach the director's testimony at trial that the door operated correctly. While evidence of subsequent remedial repairs may be admissible for impeachment purposes, see § 90.407, Fla. Stat. (1999), the trial court told Roseman that she could use the evidence to impeach the director's statement that he had reviewed his records and determined that no repairs had been made to the door within a period two months before or two months after the accident. Roseman specifically declined to do so because the evidence of subsequent repairs which she intended to offer occurred eight months after the accident. Thus, they would not be proper impeachment for the statement made by the director.[1]
Roseman also argues that Tuttle's testimony that he adjusted the door after the incident did not constitute evidence of a subsequent remedial repair because none of the adjustments would have made Roseman's injuries less likely to occur, and the evidence was not too remote. Therefore, it should have been admitted. See § 90.407, Fla. Stat. (1999); Donahue v. Albertson's, Inc., 472 So.2d 482, 484 n. 1 (Fla. 4th DCA 1985) (evidence of subsequent repairs admissible where the repair would not have made the injury less likely to occur). Section 90.407 states the rule "does not require the exclusion of evidence *522 of subsequent remedial measures when offered for another purpose, such as proving ownership, control, or the feasibility of precautionary measures, if controverted, or impeachment." Roseman argued to the trial court that Tuttle's multiple adjustments to the door sometime after July, 1997, showed that the condominium residents "were persistent [in] re-adjusting the door and that there was a problem that continued." If, by that, Roseman is arguing that the purpose is to show notice of a dangerous condition, there is no necessary connection between Tuttle's repairs eight months after the incident and appellee's knowledge of a dangerous condition at the time of the accident. In Donahue, also a malfunctioning door case, the subsequent repair evidence was relevant to support Donahue's theory that a breakaway switch on a door closer was damaged by people hitting the door as they attempted to enter the store. 472 So.2d at 483-84. A repairman, who replaced a switch just two months after the accident, testified that the customers' frustrated attempts to enter through the exit door caused the switch to break. See id. at 484. While Albertson's had attempted to claim that such abuse would not be sufficient to cause the switch to break, the subsequent repair and the testimony of the repairman proved that the customers banging the door was a cause of switch damage, thus offering direct evidence to support Donahue's theory of causation. See id. The same type of direct connection is not present in the testimony offered by Tuttle.
Moreover, it is arguable that the evidence falls squarely into section 90.407's prohibition of introducing subsequent repairs. While Tuttle did not specify what kinds of adjustments were made, we can only assume that they were made to slow down the closing speed of the door, which closing speed is what Roseman alleged was the problem with the door and caused it to hit her. Thus, such adjustments would have made the injury less likely to occur and are inadmissible.
Finally, if the evidence was offered to show notice of a dangerous condition, it was cumulative. Tuttle was allowed to testify that a director told him that the door was a constant problem. In addition, other witnesses testified to the fast closing speed of the door, which they observed prior to Roseman's accident.
"[A]bsent an abuse of discretion, decisions made by the trial court addressing the admissibility of evidence, the scope of examination of witnesses, or the appropriate subjects of inquiry in cross-examining witnesses are within the trial court's sound discretion." Klose v. Coastal Emergency Servs. of Ft. Lauderdale, Inc., 673 So.2d 81, 84 (Fla. 4th DCA 1996). No abuse of that discretion occurred in this case.
Next, Roseman challenges the exclusion of the condominium maintenance expert's testimony. The trial court considered the expert's opinions to be a matter within the common knowledge of the jury. The range of subjects about which an expert witness will be allowed to testify are within the trial judge's broad discretion. See Broward County Sch. Bd. v. Cruz, 761 So.2d 388, 394 (Fla. 4th DCA 2000), aff'd, 800 So.2d 213 (Fla.2001). In Smaglick v. Jersey Insurance Co. of New York, 209 So.2d 475, 476-77 (Fla. 4th DCA 1968), this court held that:
Expert opinions are admissible only when the facts to be determined are obscure and can be made clear only by the opinions of persons skilled in relation to the subject matter of the inquiry, and when facts are within the ordinary experience of the jury, conclusions therefrom will be left to them, and even *523 experts are not permitted to give conclusions in such cases.
In this case, whether and how the condominium residents should have been warned not to adjust the door, and whether appellee should have ensured that the door closed at a slower speed are issues within the common knowledge and experience of the jury. The trial court, therefore, did not abuse its discretion in precluding the condominium expert from testifying at trial.

Jury Instruction
Lastly, Roseman challenges the trial court's failure to include an instruction on negligent creation of a dangerous condition. The pleadings, however, did not allege negligent creation of the condition, nor did the facts support the giving of the instruction. There was no evidence that appellee actually created the door's dangerous condition (the quick closing speed). Roseman's theory of her case was that the door was negligently maintained and that appellee failed to provide adequate notice of the door's dangerous condition. The trial court did not err in failing to instruct the jury on an issue not pled nor on which any evidence was offered. See Riegel v. Beilan, 788 So.2d 990, 991-92 (Fla. 2d DCA 2000).
For the foregoing reasons we affirm the final judgment.
GROSS and HAZOURI, JJ., concur.

ON MOTION FOR REHEARING
WARNER, J.
We deny appellant's motion for rehearing. However, we address her contention that we have created a new test to avoid bifurcation. We have not.
A judge's determination to bifurcate the proceedings is one which we review for an abuse of discretion. See Microclimate Sales Co. v. Doherty, 731 So.2d 856, 858 (Fla. 5th DCA 1999). When we stated in our opinion that "we cannot determine that the issues are inextricably intertwined such that bifurcation prejudiced Roseman," we were not creating a standard test for the trial court to follow in determining whether or not to bifurcate but merely stating why we do not find that the trial court abused its discretion in ordering bifurcation. In order for us to hold that bifurcation was an abuse of discretion, we must conclude that no reasonable person would have allowed it under the circumstances. See Canakaris v. Canakaris, 382 So.2d 1197, 1203 (Fla.1980). We simply stated that the issues were not so intertwined such that the trial court's discretionary decision can be overturned.
Appellant argues that Scandinavian World Cruises (Bahamas), Ltd. v. Barone, 573 So.2d 1036 (Fla. 3d DCA 1991), sets a different standard. In Scandinavian, the third district was reviewing an order granting new trial, which the trial court granted on the ground that the bifurcation of the trial had prejudiced the plaintiff because evidence of plaintiffs brain injury was necessary to explain her inconsistent and confusing testimony on liability. It was the trial court, not the appellate court, that stated the evidence of plaintiffs injury was necessary in order to explain liability testimony. The appellate court held it was not an abuse of discretion to order a new trial based upon the trial court's change of heart regarding the decision to bifurcate. See id. at 1037. Scandinavian sets neither a trial court standard for avoiding bifurcation nor a standard for appellate review.
Like most discretionary decisions, one to bifurcate the proceedings is very difficult to overturn on appeal because of the degree of deference appellate courts give to the trial court's superior vantage point, *524 having viewed all of the proceedings in the case. We give that deference in this case.
Rehearing denied.
GROSS and HAZOURI, JJ., concur.
NOTES
[1] Other examples of the director's statements which Roseman now argues should have permitted impeachment were not raised either to the trial court or in Roseman's briefs and are not placed in context. In particular, the director's statement that the door "worked perfectly," was made in the context of his experimenting with the door himself after having received notice of the accident.