877 So.2d 59 (2004)
Tom BARKER, Appellant,
v.
STATE of Florida, Appellee.
No. 4D02-3188.
District Court of Appeal of Florida, Fourth District.
June 9, 2004.
Rehearing Denied July 28, 2004.
*60 Carey Haughwout, Public Defender, and Ian Seldin, Assistant Public Defender, West Palm Beach, for appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Sue-Ellen Kenny, Assistant Attorney General, West Palm Beach, for appellee.
HAZOURI, J.
This appeal arises from a civil commitment proceeding brought by the State of Florida against Tom Barker pursuant to Chapter 394, Florida Statutes. After a jury trial, Barker was found to be a sexually violent predator and the trial court entered a Judgment and Civil Commitment Order committing Barker to the custody of the Department of Children and Family Services until such time as it is determined that it is safe for Barker to be released. Barker appeals the Verdict, Judgment, and Order of Civil Commitment rendered on July 17, 2002 and the Order denying his Motion to Set Aside Verdict and Judgment and Motion for New Trial rendered on September 13, 2002. His sole issue on appeal is the trial court's denial of his Motion to Bifurcate. We affirm.
The State filed a petition initiating proceedings to have Barker declared a sexually violent predator in October 1999 while Barker was incarcerated on a conviction for burglary with assault or battery. As the basis for the petition, the State alleged: 1) the burglary with assault or battery that Barker was convicted of was a sexually motivated offense, 2) Barker had been charged in two prior incidents involving sexually violent offenses,[1] and 3) Barker suffers from a mental abnormality or personality disorder which makes him likely to engage in acts of sexual violence if not confined in a secure facility for long term control, care and treatment.
The trial court determined that probable cause existed to believe that Barker was a sexually violent predator and therefore eligible for commitment. Barker was then ordered to be detained while he awaited further proceedings. Prior to the civil commitment trial, Barker filed a Motion to Bifurcate. Barker argued that the trial should be bifurcated because the jury would be required to apply two different standards of proof during the proceedings. The two burdens of proof arise from the elements that the State was required to establish at trial. Pursuant to section 394.912(1), Florida Statutes (2002), in order to establish Barker as a sexually violent predator, the State was required to prove two elements: 1) Barker has been *61 convicted of a sexually violent offense and 2) Barker suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment.
With respect to the first element, section 394.912(9) contains a list of crimes that are considered sexually violent offenses. In most civil commitment proceedings under this chapter, the underlying offense is one of the enumerated offenses and therefore the State need only show that one of these crimes has been committed in order to establish the first element at trial. However, in Barker's case, the underlying conviction was a conviction for burglary with assault or battery. This is not one of the sexually violent offenses enumerated in section 394.912(9). Therefore, the State was required to prove that the burglary was sexually motivated.[2] If the State can prove that the burglary was sexually motivated, it would fall within the catch-all provision of section 394.912(9)(h) which defines a sexually violent offense as: any criminal act that, either at the time of sentencing for the offense or subsequently during civil commitment proceedings, has been determined beyond a reasonable doubt to have been sexually motivated.
Once the State establishes beyond a reasonable doubt that the burglary was sexually motivated, then the State must also present clear and convincing evidence to establish the second element: the mental abnormality or personality disorder making Barker likely to engage in future acts of sexual violence. Barker argued that there was a likelihood that the jury would be confused by the differing standards of proof and requested that the trial be separated as follows: First, the jury would hear the evidence relating to the burglary and be required to make a determination whether it was established beyond a reasonable doubt that the burglary was sexually motivated. If the jury found that the burglary was sexually motivated, then during the second part of the trial the State could present evidence relating to Barker's alleged mental abnormality/personality disorder and his likelihood to commit offenses in the future. However, if the jury determined that the State had not established beyond a reasonable doubt that the burglary was sexually motivated, then the trial would end and there would be no need to proceed further.
After hearing argument on the motion, the trial court entered an Order denying Barker's Motion to Bifurcate. The trial court found as follows:
The standard jury instructions relative to this case do not contemplate that there would be a bifurcated trial on the establishment of any of the three elements as set out in those instructions. This Court cannot presume that a jury will be confused by the instructions and sees no reasons for a bifurcated trial.
At the start of the trial, Barker renewed his Motion to Bifurcate. He provided no additional support for his motion and the trial court again denied the motion. During the trial, the State presented testimony and evidence relating to: the November 1994 incident which resulted in his conviction for burglary with assault or battery, the March 1994 incident that Barker was never officially charged with, and the 1985 conviction in Kansas. In addition, the State presented extensive testimony from several psychologists relating to Barker's mental state. The experts testified that Barker suffers from a personality disorder which makes him likely to be *62 dangerous to the public without further treatment of his disorder. The jury found that Barker was a sexually violent predator and the trial court entered a Judgment and Order of Civil Commitment in accordance with the jury verdict.
A trial court's decision to bifurcate is generally subject to an abuse of discretion standard of review. See Roseman v. Town Square Ass'n, 810 So.2d 516, 521 (Fla. 4th DCA 2001). On appeal Barker makes essentially three separate arguments in support of his contention that the trial court's failure to bifurcate violated his right to due process. First, he argues that it is likely that the jury was confused when asked to apply two different standards of proof to the separate elements that the State was required to prove at trial. He contends that this confusion may have caused the jury to apply the lesser "clear and convincing" evidence standard to the entire proceeding. This is the argument upon which his pre-trial Motion to Bifurcate was based. In denying the motion, the trial court determined that the jury instructions adequately addressed the two standards of proof and did not contemplate that a bifurcated trial would be necessary. We agree. The instructions clearly state that before the jury could find that the burglary was sexually motivated, the State must prove, beyond a reasonable doubt, that one of the purposes for which the person committed the crime was sexual gratification. The instructions given to the jury were as follows:
To prove the respondent, Tom Barker, is a sexually violent predator, the State must prove each of the following four elements by clear and convincing evidence.
1. Tom Barker has been convicted of a sexually violent offense; and
2. Tom Barker suffers from a mental abnormality or personality disorder; and
3. The mental abnormality or personality disorder causes Tom Barker to have serious difficulty in controlling his behavior, and his inability to control his behavior is sufficient to distinguish him from dangerous recidivists convicted in ordinary criminal cases; and
4. The mental abnormality or personality disorder makes him likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment.
Before the Respondent, Tom Barker, can be confined in a secure facility, the State has the burden of proving, by clear and convincing evidence, that he is a sexually violent predator.
Clear and convincing evidence is evidence that is precise, explicit, lacking in confusion, and of such weight that it produces a firm belief or conviction, without hesitation, about the matter in issue.
A sexually violent offense is:
Any criminal act that has been determined beyond a reasonable doubt to be sexually motivated. In this cause the criminal act in question is the burglary of a conveyance with assault or battery occurring on November 20th, 1994. However, before you can find the crime was sexually motivated, the State must prove, beyond a reasonable doubt, that one of the purposes for which the person committed the crime was sexual gratification. If you have a reasonable doubt about whether or not the crime was sexually motivated, then you should find the act was not sexually motivated.
A reasonable doubt is not a mere possible doubt, a speculative, imaginary or forced doubt. Such a doubt may not *63 influence you to find the crime was not sexually motivated if you have an abiding conviction that it was. On the other hand, if, after carefully considering, comparing and weighing all the evidence, there is not an abiding conviction that the act was sexually motivated, or, if having a conviction, it is one which is not stable but one which wavers and vacillates, then it has not been proven beyond every reasonable doubt.
There is no reason to believe, based on these jury instructions, that there is a likelihood that the jury was confused.[3]
In addition, Barker's counsel focused on the reasonable doubt standard during closing argument. He argued as follows:
The judge is going to instruct you that you must find sexual motivation beyond a reasonable doubt, and here there's plenty of reasonable doubt as to sexual motivation because it comes only from one person, Kevin Sossi (an eyewitness).
...
We don't have to prove that it (the burglary) was something other than for purposes of sexual motivation. The burden is on the State to prove sexual motivation beyond a reasonable doubt.
During deliberations, the jury did not ask any questions which would evidence any confusion concerning the burden of proof.
Barker's second argument on appeal relates to the evidence presented at trial regarding the two prior "similar" incidents where Barker was accused and/or convicted of sexual battery. Barker argues that had the trial been bifurcated, this similar fact evidence would not have been admissible with respect to the first element. Therefore, allowing the jury to hear this evidence prior to making its determination of whether the burglary was sexually motivated unfairly prejudiced him. Barker did not make this argument in his written Motion to Bifurcate. The written motion addressed only his argument regarding the varying standards of proof. The transcript of the hearing on the motion reflects that Barker briefly argued this to the trial court, but he did not obtain a ruling on this issue. The trial court never made any determination regarding the admissibility of the prior bad act evidence. Therefore, we find that the issue is not preserved for appellate review. See Carratelli v. State, 832 So.2d 850 (Fla. 4th DCA 2002) (in order to preserve an argument for appellate review, a party must make the objection sufficiently precise to fairly apprise the trial judge of the grounds for the relief sought and must obtain a ruling on the objection); Armstrong v. State, 642 So.2d 730 (Fla.1994); Filan v. State, 768 So.2d 1100 (Fla. 4th DCA 2000).
In addition, Barker did not object to the admission of evidence relating to the prior incidents during the trial. We also note that Barker did not request a limiting instruction to the jury that the evidence of *64 prior similar acts should not be considered by the jury in making its determination as to whether the burglary was sexually motivated.
Barker's third argument on appeal relates to the expert testimony that the State presented during trial. Several psychologists testified that based on their review, Barker suffers from a mental abnormality, he lacks volitional control, and is likely to commit future acts of sexual violence. Barker argues that this testimony is only relevant to the second element that the State was required to prove. He asserts that if the trial had been bifurcated, this evidence would not have been admissible during the first part of the proceeding. Therefore, he contends that allowing the jury to hear the expert testimony during the same proceeding prejudiced the jury in its determination of whether the burglary was sexually motivated and improperly bolstered the State's evidence relating to the first element. Barker argues:
The fundamental unfairness in a non-bifurcated trial rests in the fact that a respondent cannot effectively mount a defense to the allegation that the underlying felony conviction was sexually motivated when the jury is simultaneously exposed to expert testimony opinion that he is a sexually violent predator who will more likely than not commit future acts of sexual violence.
As pointed out by the State, Barker makes this argument for the first time on appeal and therefore has failed to preserve this as error. We agree. See Reid v. State, 799 So.2d 394 (Fla. 4th DCA 2001)(in order to preserve an issue for appeal, counsel must preserve the issue by making a specific objection to the admission of evidence on the same grounds as raised on appeal).
We therefore affirm the trial court's denial of the Motion to Bifurcate.
AFFIRMED.
GUNTHER, J., concurs.
FARMER, C.J., dissents with opinion.
FARMER, C.J., dissenting.
With abundant respect for the majority, I fear that our Court's opinion today may misapprehend the precise issue raised by defendant. I am also afraid that his arguments may not be fairly portrayed in our opinion. I personally do not read his argument on appeal to be directly concerned with whether the jury instructions were confusing or with the use of inadmissible evidence. I believe that the real issue and argument are far more provocative than we have indicated.
As I understand defendant's brief, this case concerns what he describes as the state's two-part burden in attempting to commit a man indefinitely as a sexually violent predator under the "Jimmy Ryce Act" (JRA). See §§ 394.910-.930, Fla. Stat. (2003). Essentially defendant does not really argue error in the jury instructions or evidence used to prove each of these two parts. Nor does he contest the fact that the text of the applicable rule of procedure could allow a trial judge to deny a motion to try the case in two stages, separating the first part from the second part.[4]
Instead he asserts that under the circumstances of this case, enforcing the statute and rule as written denies him due process of law. He says that it is unfair to the defendant to try the two requisite *65 showings together in a single, uninterrupted proceeding. Doing so, he argues, gives the state a significantly unfair advantage in proving the first part of its burden while disadvantaging him in defending on that issue. Thus, he acknowledges what the rule provides, but asserts instead that the application of the rule denies him due process of law.
This process employed in his trial, he argues, raises significant doubts about the reliability of any jury determination on that first part. The consequence, he continues, of an unreliable determination on the first part is that he is reasonably likely to suffer an erroneous deprivation of his all-important interest in personal liberty  i.e., he will be confined indefinitely, perhaps for as long as the rest of his life  if the jury believes the state's experts about the second part. In contrast, he points out, the cost to the state of bifurcating the two parts is non existent, nothing at all, no disadvantage, while the cost to him of failing to do so is catastrophic. Because there is no adverse consequence to the state from such a bifurcation, he argues that it should have been granted as a matter of law. In short, the essential question presented is whether trying both aspects of the sexual predator claim against him in a unitary proceeding satisfies all the constitutionally mandated process due him.
It is appropriate to expand on the argument he presents, prominently using defendant's own lawyer's words. Under the JRA, there are two things the state must prove to commit someone as a sexually violent predator: (a) that defendant has been convicted in the past of a sexually violent offense; and (b) that he suffers from a present mental disorder making him likely to engage in acts of sexual violence if permitted to remain free.[5] This is what he refers to as the state's two-part burden in the commitment case. He asserts that part (a) looks backward to past conduct, part (b) forward to the future from the present.
As to part (a), under the statute there are three alternative methods for the state to satisfy its burden of proving a past conviction of a sexually violent offense:
(1) it can show that he was convicted of a specific felony enumerated in the statute;
(2) it can show a conviction of a comparable offense in this state or any other state or federal offense; or
(3) it can show that he was convicted of any crime that was shown at sentencing or in the later JRA civil commitment proceeding to have been sexually motivated.[6]
In this case, defendant was charged under alternative (3): the state alleged that he had been convicted in 1996 of an unenumerated offense of burglary that was in fact sexually motivated, even though it was not apparent at the time of the conviction. *66 Because neither the nature of the crime itself, nor the sentencing for that conviction, reflected any sexual motivation, the state had the burden at the trial on the JRA civil commitment claim to prove beyond a reasonable doubt that defendant's 1996 conviction for burglary was in fact sexually motivated.
Here defendant notes that in most JRA civil commitments the state will rely only on one of the enumerated offenses in alternative (1) to prove a past conviction. A past conviction for one of the enumerated offenses in alternative (1) does not require any independent proof of sexual motivation. The fact of a violent sexual offense is apparent because by their very nature alternative (1) crimes are violent sexual offenses. Thus the first part of the state's burden in most cases is not really an issue of contention in the majority of JRA civil commitment trials. Proof of one of the enumerated offenses in alternative (1) is done by a certified copy of the conviction itself or of the prison record. The case is then fought primarily on the second part, whether defendant has such a present propensity to commit violent sexual offenses that he is currently a danger to the public.
But as here, defendant asserts, when the state relies on an alternative (3) conviction, a different trial dynamic necessarily presents itself. Unless defendant has previously admitted that such a conviction  here, a burglary  was sexually motivated, the state must adduce additional evidence from the past showing an actual sexual motivation not apparent from the crime itself.[7] The state will have to dig into the murky issue of the particular intent with which defendant did something years in the past to prove the predicate conviction. It is important to appreciate that whether a person did an act with a certain intent is not amenable to expert opinion. The state must prove the fact of sexual motivation from eye witnesses, surrounding conduct and circumstances and similar kinds of fact evidence. Its burden is to prove this predicate beyond a reasonable doubt.
In contrast, part two of the state's burden will be spent almost exclusively in evidence about defendant's present and future propensities. The state's evidence will focus on current and future inclinations: whether the defendant has a present propensity to commit such violent sexual offenses that he is currently a danger to the public. For this issue, the state will place almost exclusive reliance on expert testimony and related evidence. Moreover this later part will be subject to a lessened burden of proof.
Defendant thus argues that the differing dynamics facing the jury in part one of the state's burden, focusing only on past conduct, and then in part two, focusing only on present and future propensities, are the cornerstone of a structural unfairness in a *67 unitary, uninterrupted trial. When the trial is not bifurcated, the jury hears all at one time the evidence of a present propensity to commit violent sexual offenses, even while it is also hearing evidence as to the intent behind a past criminal act that on its face has no sexual aspects.
In this circumstance, defendant argues, he is severely hampered in defending against the state's claim that his old conviction was in truth sexually motivated. After the jury has been subjected to considerable expert testimony about defendant's long propensity to seek sexual gratification through violence, a primary force in his life, it would hardly be surprising if the ordinary juror found enormous difficulty in ascertaining and assessing this past conduct solely by reference to fact evidence from the past. Given the intended effect of the expert opinion propensity evidence, the reliability of any jury determination that the past non-sexual crime was in fact sexually motivated is called profoundly into question.
I pause at this point for an observation from the cases. In Kansas v. Hendricks, 521 U.S. 346, 117 S.Ct. 2072, 138 L.Ed.2d 501 (1997), the Court upheld the Kansas equivalent of Florida's JRA. In doing so, the Court emphasized that the Kansas act did not suffer from a substantive due process defect in its involuntary and indefinite commitment of sexual offenders who were dangerous to the public, because, among other things:
"The statute ... requires proof of more than a mere predisposition to violence; rather, it requires evidence of past sexually violent behavior and a present mental condition that creates a likelihood of such conduct in the future if the person is not incapacitated."
521 U.S. at 357, 117 S.Ct. 2072. Then, in relying on Hendricks to uphold the JRA, the Florida counterpart to the Kansas statute, the Florida Supreme Court explicitly emphasized that under JRA "only individuals convicted of a sexually violent offense are eligible for commitment ..." Westerheide v. State, 831 So.2d 93, 100 (Fla.2002).[8]
The requirement of a conviction for a past violent sexual offense serves to insure that persons will not be indefinitely committed under JRA based only on expert opinion evidence as to propensities alone. It represents a legislative belief that indefinite commitments without a concrete instance of past sexually violent conduct might result in commitment of someone not actually having such a propensity, in spite of expert opinion that he does. The fact that defendant has actually once before committed a violent sexual offense serves to reinforce scientific opinion that he has a propensity to do so. In short the very constitutionality of JRA depends on the requirement that the state prove both parts of the two-part burden with a high degree of reliability. I repeat, first the state must prove that defendant was convicted in the past of a sexually violent offense; second, the state must prove a *68 present propensity making him dangerous to the community. One without the other is not enough; the validity of JRA laws rests on the combination of past conduct with present dangerous propensities.
It is constitutionally understandable that Florida would require that defendants be guilty of past convictions in the first part of the state's JRA commitment burden. A criminal conviction carries a high degree of reliability because of the requirements of proof beyond a reasonable doubt and a unanimous jury. The fact that the past conduct is based on a criminal conviction allows a high level of confidence that defendant really did engage in conduct from which society may now be thought in danger.
But the problem is that JRA has also broadened the universe of predicate offenses beyond those explicitly sexual on which to found a claim that defendant has propensities to engage in violent sexual misconduct. In alternative (3) of the JRA, the statute includes past offenses not having anything to do with sex. In fact, the state has added the entire roster of its criminal code  both misdemeanors and felonies, I might add  to be eligible to serve as predicate offenses, so long as it can prove that when they were committed they were sexually motivated. I emphasize that the state has not limited such offenses to those that were shown in the original criminal proceeding itself to have been sexually motivated. It has allowed itself the litigation right to prove years after a conviction that the non-sexual nature of the crime masked an act of sexual violence. In this case the state relies solely on this alternative for the past conduct part of its burden.
It is peculiarly because of this alternative (3) that defendant's contention of "different trial dynamics" has palpable weight. The fact about the predicate conviction that the state is allowed to try to prove in alternative (3) concerns that most unfathomable of all human attributes  a hidden, secret intent behind a person's behavior. And here we are not talking of past conduct in general but specific conduct, perhaps years in the past, for which the defendant was duly convicted but which at the time had no articulated sexual motivation.[9]
As I have already observed, this formerly unstated intent is to be shown in the usual way by fact evidence of attendant circumstances, surrounding conduct, and the like. But this leads to a number of questions. Is the state entitled to use "other crimes, wrongs or acts" ("Williams Rule") to show this old intent  evidence that was then inadmissible for the crime on trial as being unrelated to its elements but is now relevant to the new fact in issue? See § 90.404(2), Fla. Stat. (2003). Could the state attempt to prove that in 1996 defendant committed a burglary out of sexual motivation by adducing proof of sexual conduct that was not itself a crime? Could the state use evidence of sexual offenses not contemporaneous with the burglary  say, years before or years after? What is the effect on the jury, in determining the second part of the state's burden, of Williams rule evidence admitted only to prove the first part of the state's burden? Does the effect of these kinds of evidence on the jury substantially weaken the force of the mandatory requirement of a past criminal conviction of *69 a sexually violent offense to something of less significance than JRA appears to require? If so, does that threaten the constitutionality of JRA?
If the state is allowed to use an uninterrupted, unitary trial for both JRA burdens, and the jury thereupon is exposed to all of the state's propensity evidence before it decides the issue of past conduct resulting in a criminal conviction, how much confidence can we place in the correctness of the jury's determination as to sexual motivation for the predicate conviction? How reliable can the fact finding be that "only [an] individual[ ] convicted of a sexually violent offense [was] eligible for commitment under [JRA]"? Westerheide, 831 So.2d at 100. I think the very force of these questions demonstrates the constitutional defects in trying this alternative (3) kind of JRA case without bifurcating the first part of past conduct from the second part of propensity. It needlessly casts a cloud of grave doubts over the fairness of the procedures used and the reliability of the outcome.
The United States Supreme Court has made clear in several cases that "the function of legal process is to minimize the risk of erroneous decisions." [e.s.] Addington v. Texas, 441 U.S. 418, 425, 99 S.Ct. 1804, 60 L.Ed.2d 323 (1979); Mathews v. Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); Speiser v. Randall, 357 U.S. 513, 525-26, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958). It has also repeatedly acknowledged that "civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection." Addington, 441 U.S. at 425, 99 S.Ct. 1804; Jackson v. Indiana, 406 U.S. 715, 92 S.Ct. 1845, 32 L.Ed.2d 435 (1972); Humphrey v. Cady, 405 U.S. 504, 92 S.Ct. 1048, 31 L.Ed.2d 394 (1972); In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967); Specht v. Patterson, 386 U.S. 605, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967); see also Hendricks, 521 U.S. at 357, 117 S.Ct. 2072 ("We have consistently upheld such involuntary commitment statutes provided the confinement takes place pursuant to proper procedures and evidentiary standards.").
And defendant's argument reminds us that there is no single, all purpose test for due process; the nature and circumstances of each claim call for individualized consideration:
"`Due process, unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.' `(D)ue process is flexible and calls for such procedural protections as the particular situation demands.' Accordingly, resolution of the issue whether the ... procedures provided ... are constitutionally sufficient requires analysis of the governmental and private interests that are affected. More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." [e.s., c.o.]
Mathews v. Eldridge, 424 U.S. 319, 334-35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); see also Santosky v. Kramer, 455 U.S. 745, 774-75, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (Rehnquist, J., dissenting) ("Due process of law is a flexible constitutional principle. The requirements which it imposes *70 upon governmental actions vary with the situations to which it applies.... Courts must examine all procedural protections offered by the State, and must assess the cumulative effect of such safeguards. As we have stated before, courts must consider `the fairness and reliability of the existing ... procedures' before holding that the Constitution requires more.").
Thus it is clear to me that defendant's appeal requires us to do more than simply point to the rules of civil procedure, and label the decision discretionary, to justify an affirmance of the trial court's refusal to bifurcate the past conduct element from the propensity element in this JRA trial where the state relied on alternative (3) to prove a past criminal conviction. Instead we must "examine [the] procedural protections offered by the State, and ... assess the cumulative effect of such safeguards." Santosky, 455 U.S. at 775, 102 S.Ct. 1388 (Rehnquist, J., dissenting).
We must, in short, determine what process is due to satisfy the constitutional imperative of "such procedural protections as the particular situation demands." Mathews, 424 U.S. at 334, 96 S.Ct. 893. Specifically we must ask whether the rule's discretion to deny bifurcation satisfies the requirement of constitutional sufficiency. We must weigh the interest of defendant, his right to liberty, against the burden imposed on the state by denying bifurcation. We must assess the risk that a denial of bifurcation might lead to an erroneous determination on the past conduct issue.
When I engage in this constitutional analysis, I come out of it with grave doubts about the reliability of this jury finding that the 1996 burglary was sexually motivated. In the presence of the state's considerable evidence of defendant's existing propensity to commit violent sexual offenses, I simply cannot be confident that any jury would base a determination on defendant's past conduct solely on the basis of the surrounding circumstances and actions contemporaneous with the event. I very much doubt that at this point any jury could truly disregard the state's propensity evidence. If we can be so solicitous of the comparable trial dynamic when punitive damages are sought and routinely require bifurcation, see W.R. Grace & Co.-Conn. v. Waters, 638 So.2d 502 (Fla.1994) (trial court required to bifurcate amount of punitive damages from liability therefor), I don't see why trial courts should not be required to bifurcate the trial of part (a) from part (b) in these alternative (3) cases.
The refusal to bifurcate simply asks too much of citizen fact-finders to be fair to defendants. It is like asking a jury to squeeze lemon juice into their milk but then to strain it out before drinking. They might try very hard, but little lemon juice will be removed. On the other hand, the jury could drink their milk before squeezing the lemon juice into the glass. In that way, they could have both the sweetness of the milk and the tartness of the juice without forfeiting either.
I would reverse for a bifurcated trial before a different jury.
NOTES
[1] The two prior incidents alleged by the State were a 1985 conviction in a district court in Kansas for one count of unlawful restraint and one count of sexual battery and a March 1994 arrest by the Riviera Beach Police Department that resulted in Barker being charged with one count of sexual battery with force, one count of simple battery, and one count of false imprisonment. However, no formal charges were ever filed for the March 1994 incident and Barker was never convicted of any crimes with regard to that incident.
[2] "Sexually motivated" means that one of the purposes for which the defendant committed the crime was sexual gratification. § 394.912, Fla. Stat. (2002)
[3] It should be noted that any potential jury confusion could have been addressed through a revised verdict form. The verdict form that was given to the jury did not distinguish between the two elements that the State was required to prove. The verdict form only asked the jury one question: whether or not the jury unanimously found that Barker was a sexually violent predator. Perhaps a clearer way to recognize the two elements would have been to first ask the jury if it found beyond a reasonable doubt that the burglary was sexually motivated. If no, then the jury would end its deliberation. But, if the jury answered yes, the jury would have been required to answer the second question which was whether Barker is a sexually violent predator. However, the record reflects that Barker never objected to the verdict form and did not ask for a form containing these two separate questions.
[4] See Fla. R. Civ. P. 1.270(b) ("The Court in the furtherance of convenience or to avoid prejudice may order a separate trial of any claim ... or of any separate issue ... or issues.").
[5] See § 394.912(10), Fla. Stat. (2003) ("`Sexually violent predator' means any person who (a) Has been convicted of a sexually violent offense; and (b) Suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment.").
[6] See § 394.912(9), Fla. Stat. (2003) ("`Sexually violent offense' means: [paras. (a) through (f)]; (g) any conviction for a felony offense in effect at any time before October 1, 1998, which is comparable to a sexually violent offense under paragraphs (a)-(f) or any federal conviction or conviction in another state for a felony offense that in this state would be a sexually violent offense; or (h) any criminal act that, either at the time of sentencing for the offense or subsequently during civil commitment proceedings under this part, has been determined beyond a reasonable doubt to have been sexually motivated.").
[7] The text for alternative (3) under JRA is thus:

"Any criminal act that, either at the time of sentencing for the offense or subsequently during civil commitment proceedings under this part, has been determined beyond a reasonable doubt to have been sexually motivated." [e.s.]
§ 394.912(9)(h), Fla. Stat. (2003). The use of the sentencing record, as well as the use of the past perfect form of the verb raise significant questions. Under Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), only evidence (other than criminal history) submitted to the jury in the criminal trial may be used to enhance punishment. Hence I doubt that the JRA statutory text "at the time of sentencing" means anything other than what was adduced at the criminal trial or was available to be adduced then. The past perfect form of the verb, "to have been sexually motivated," means that the state is limited to evidence of conduct contemporaneous with the crime underlying the conviction to prove that it was sexually motivated.
[8] Westerheide involved mostly facial challenges to the JRA. The court's decision addresses the facial substantive due process, double jeopardy and equal protection issues applying to JRA generally. The opinion also addressed a procedural due process issue relating to the burden of proof. It did not consider the procedural due process issue raised in today's case. As Westerheide itself said:

"To the extent that Westerheide's due process claims turn on factual disputes, such claims should have been presented to the trial court and will not be addressed for the first time on review by this Court."
831 So.2d at 105. Defendant here has preserved his due process issue.
[9] I need hardly add that this later addition to a conviction that was final without proof of sexual motivation has no counterpart for defendants. After their conviction becomes final, criminal defendants generally cannot under any circumstances attempt to prove in some later civil proceeding involving the state that they actually lacked criminal intent when they committed the crime for which they were duly convicted.